[No. D054830. Fourth Dist., Div. One. Oct. 8, 2009.]

In re CALVIN P. et al., Persons Coming Under the Juvenile Court Law.

SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Plaintiff and Respondent, v.
P.P., Defendant and Appellant;
CALVIN P. et al., Appellants.

COUNSEL

Nicole Williams, under appointment by the Court of Appeal, for Defendant and Appellant.

John J. Sansone, County Counsel, John E. Philips, Chief Deputy County Counsel, and Katharine R. Bird, Deputy County Counsel, for Plaintiff and Respondent.

M. Elizabeth Handy, under appointment by the Court of Appeal, for Minors and Appellants.

OPINION

McDONALD, J.—P.P. (Mother) and her children Calvin P. and Kayla P. (together the children) appeal a juvenile court order requiring the San Diego County Health and Human Services Agency (the Agency) to provide family maintenance services for their family. They contend the court erred by requiring family maintenance services instead of reunification services for Mother because the children were placed in the custody of their father C.P. (Father), not with Mother, and the Agency had not provided reasonable reunification services for Mother even though the services were court ordered and were in the children's best interests. We affirm the order requiring family maintenance services for Father and the children, but reverse the order for family maintenance services for Mother and order she be provided reasonable reunification services.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 14, 2006, the Agency petitioned under Welfare and Institutions Code[1] section 300, subdivision (b), on behalf of 12-year-old Calvin and seven-year-old Kayla, alleging Mother's use of methamphetamine had caused their sibling K.P. to be removed from Mother's care at birth; Mother's services regarding K.P.'s dependency were terminated in part because she did not participate in substance abuse treatment; after K.P. was returned to Father's custody, Father allowed Mother to reside in the family home in violation of an order that she have no visitation with K.P.; K.P. died while in Mother's care; Mother stated she may have overmedicated him; and she left his body in a crib to decompose and then placed it in a dumpster.

---

[1] Statutory references are to the Welfare and Institutions Code.

Mother was arrested and Calvin and Kayla were detained with a relative. The court ordered Mother have no contact with the children, but later ordered they would have supervised visits at the jail where she was incarcerated because the children wanted to see her. In June 2007 the court found the allegations true and ordered reunification services for Father, but ordered no services for Mother.[2]

Mother appealed and on January 2, 2008, this court reversed the order denying her services and remanded the case for the juvenile court to determine whether offering services to her would be in the children's best interests within the meaning of section 361.5, subdivision (c).

At the 12-month hearing on May 12, 2008, the court found it would be in the children's best interests to offer reunification services to Mother and determined she was entitled to 12 months of services. The court authorized therapy for her, and ordered the social worker to submit a case plan and for Mother to undergo a psychological evaluation. The court also continued Father's reunification services.

On May 20, 2008, the Agency filed subsequent petitions under section 342, alleging Mother had pleaded guilty to involuntary manslaughter in connection with K.P.'s death.

On June 9, 2008, the court found the allegations of the section 342 petitions true and ordered a case plan for Mother that required counseling, parenting education and drug treatment. The court placed the children with Father with family maintenance services and set a six-month review hearing.

In October 2008 the social worker reported she had written to the counselor to whom Mother was assigned at the Chowchilla women's prison (Chowchilla), where Mother was incarcerated. She said Father had not taken the children to visit Mother because he thought Chowchilla was too far away and he believed Mother would soon be moved back to San Diego. Mother had written letters to the children. In March 2009 the social worker reported that in October 2008 Mother had asked to participate in parenting classes at the prison, but it was determined she would not be incarcerated long enough to complete the class. Her scheduled release date was in April 2009.

---

[2] In August 2007, while in jail, Mother gave birth to another child. He also became a dependent of the court and the court ordered Mother not receive services.

At the six-month review hearing in March 2009, Mother's counselor at Chowchilla testified therapy for inmates and their children was available at the prison, but there had never been a request for therapy in Mother's case.

The social worker testified she had informed Father about a free quarterly bus service to Chowchilla, but Father did not take the children to visit Mother. The social worker said she had written to Mother's counselor at Chowchilla in October 2008 and had left telephone messages, but received no response. She had spoken with other counselors, and one told her a parenting class was not offered to Mother because by the time she requested it, her remaining time at the prison was too short for her to be able to complete the class. The social worker testified Mother had not had conjoint therapy or a psychological evaluation. The Agency had provided no services to Mother from the date they were ordered in May and June 2008 until October 2008.

After considering the testimony, documentary evidence and argument, the court stated if it were to decide whether Mother had been provided reasonable services, it would find she had not received reasonable services, but the question was moot because the children had been placed with Father. It continued the placement, ordered family maintenance services for the family and set a six-month review hearing. It ordered Mother be provided with a psychological evaluation on her release from custody.

## DISCUSSION

Mother and the children contend the court prejudicially erred by finding the issue of whether Mother received reasonable reunification services was moot and by ordering family maintenance services, rather than reunification services, for Mother.

The Agency argues when the children have reunified with one parent the goal of reunification has been met, and thus the court should proceed by way of section 364, which provides that services to the nonreunifying parent are discretionary. In our view, the Agency's argument misses the point.

■ The juvenile court had already exercised its discretion under section 364 on June 9, 2008, when it placed the children with Father with family maintenance services and reaffirmed its order of May 12 that Mother was entitled to 12 months of reunification services. Because the court ordered reunification services for Mother, but the Agency disregarded the order, the order must now be implemented and reunification services provided to Mother. "Family preservation is the first priority when dependency proceed-

ings are commenced. [Citations.] . . . 'Reunification services implement "the law's strong preference for maintaining the family relationships if at all possible." [Citation.]' [Citations.]" (*Mark N. v. Superior* Court (1998) 60 Cal.App.4th 996, 1010 [70 Cal.Rptr.2d 603].) " 'Child welfare services' . . . means services provided on behalf of children alleged to be the victims of child abuse, neglect, or exploitation. The child welfare services provided on behalf of each child represent a continuum of services, including emergency response services, family preservation services, family maintenance services, family reunification services, and permanent placement services. The individual child's case plan is the guiding principle in the provision of these services." (§ 16501, subd. (a).)

██ The significant difference between family maintenance services and reunification services is that family maintenance services are intended for situations in which children are not removed from parental custody, while reunification services are designed for times when children are removed from their parents.

"[F]amily reunification services are activities designed to provide time-limited foster care services to prevent or remedy neglect, abuse, or exploitation, when the child cannot safely remain at home, and needs temporary foster care, while services are provided to reunite the family." (§ 16501, subd. (h).)

"[F]amily maintenance services are activities designed to provide in-home protective services to prevent or remedy neglect, abuse, or exploitation, for the purposes of preventing separation of children from their families." (§ 16501, subd. (g).)

"The goal of both reunification and maintenance services is to address the circumstances which required agency and court intervention into a family's life." (*Carolyn R. v. Superior Court* (1995) 41 Cal.App.4th 159, 166 [48 Cal.Rptr.2d 669].) Reunification and family maintenance services offered in particular cases may, in fact, be nearly identical. However, one example of a reunification service is visitation, a service that would not be appropriate as a part of a family maintenance plan. (*Id.* at p. 166, fn. 7.)

Providing family maintenance services for one parent and reunification services for the other can be appropriate in certain situations. Under section 361.2, when a child is removed from the previously custodial parent and placed with the previously noncustodial parent, the court chooses whether or not to order services for the previously custodial parent, for the custodial

parent or for both parents. Section 361.2, subdivision (b)(3), provides the court "may order that *reunification* services be provided to the parent or guardian from whom the child is being removed, or the court may order that services be provided solely to the parent who is assuming physical custody . . . , or that services be provided to both parents . . . ." (§ 361.2, subd. (b)(3), italics added; see *In re Erika W.* (1994) 28 Cal.App.4th 470, 475 [33 Cal.Rptr.2d 548].)

This situation is analogous. At the June 9, 2008, hearing, the children were placed with Father, not with Mother. At that hearing the court ordered family maintenance services for Father, while ordering a reunification case plan for Mother designed to help her reunite with the children. (§ 16501, subd. (h).) It was error for the court at the six-month review hearing on March 24, 2009, to find the issue of whether Mother had received reasonable reunification services was moot and that her reunification services had necessarily become a part of the family maintenance services ordered for the family.

At the March 3, 2009, hearing the social worker acknowledged the Agency had not provided the court-ordered reunification services to Mother. Mother's counsel asked the social worker, "You're aware that the services were ordered in the best interest of the children?" The social worker answered, "Yes." The children's counsel asked, "Between May 12th and October 20th of 2008, what services did the Agency provide to Mother to reunify with her children?" The social worker answered, "None."

■ When a dependency case is referred to a section 366.26 hearing and a parent for whom the court had ordered reunification services has not received reasonable services, the reviewing court will vacate the order setting the section 366.26 hearing so that the services may be provided. (See *Mark N. v. Superior Court, supra,* 60 Cal.App.4th at pp. 1015–1019.) Here, although this family is on the path toward reunification, not toward termination of parental rights, the remedy for Mother not receiving the court-ordered services is the same. Because the court exercised its discretion at the June 9, 2008, hearing and ordered a reunification case plan for Mother, but the Agency disregarded the order, the order must now be implemented to provide reasonable reunification services for Mother. We reverse the order for family maintenance services for Mother and direct the juvenile court to order the Agency to provide the reunification services the court ordered on May 12, 2008, and reaffirmed on June 9, 2008.

## DISPOSITION

The order to provide family maintenance services for Father and the children is affirmed. The order to provide family maintenance services for Mother is reversed. The juvenile court is directed to vacate the order requiring family maintenance services for Mother and to order the Agency to implement the June 9, 2009, order that she be provided reasonable reunification services.[3]

Benke, Acting P. J., and McIntyre, J., concurred.

---

[3] If, at a family maintenance review hearing, the juvenile court determines under section 364, subdivision (c), that conditions no longer exist to justify continued juvenile court jurisdiction, the juvenile court has the authority to terminate Mother's reunification services.