Filed 8/28/14  In re B.H. CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# THIRD APPELLATE DISTRICT

## (Sacramento)

----

| | |
|---|---|
| In re B.H., a Person Coming Under the Juvenile Court Law. | C075209 |
| SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES, | (Super. Ct. No. JD232206) |
| Plaintiff and Respondent, | |
| v. | |
| DEBORAH S., | |
| Defendant and Appellant. | |

Deborah S. (mother) appeals the juvenile court's order denying her petition for modification for reunification services.  She contends the juvenile court abused its discretion in denying her services as she had demonstrated changed circumstances that she could benefit from services.  We disagree and shall affirm the juvenile court's order.

1

## FACTUAL AND PROCEDURAL BACKGROUND

The Sacramento County Department of Health and Human Services (the Department) took the minor, B.H., into custody 12 days after he was born (in February 2012), based on his testing positive for marijuana. Mother claimed to the mandated reporter that she did not realize she was pregnant and had smoked marijuana until a few days before she gave birth.[1]

The Department filed a petition under Welfare and Institutions Code section 300.[2] The petition alleged a substantial risk of serious physical harm based on abuse of the minor's sibling in a 2010 case, failure to protect based on the injuries to the sibling (§ 300, subd. (a)), failure to protect based on mother's daily substance abuse while pregnant, father's substance abuse, and both parents' developmental delays (§ 300, subd. (b)), and abuse of the minor's sibling, resulting in termination of parental rights in 2011 (§ 300, subd. (j)). The petition also alleged mother had been diagnosed with mental retardation and had a developmental delay that impaired her judgment and ability to provide adequate care. The juvenile court ordered the minor detained.

At the jurisdictional hearing, both mother and father claimed the minor's sibling had been injured by the maternal grandmother. They claimed the maternal grandmother was no longer in the family's life and, therefore, there was no further risk of injury. Mother also claimed she stopped using drugs during her fifth month of pregnancy and she tested positive at the minor's birth because the drugs had not yet left her system. Father admitted using marijuana daily until about one month earlier. Mother and father did not believe their developmental delays put the minor at risk.

---

[1] However, mother and paternal grandmother told the social worker mother had known she was pregnant for several months.

[2] Undesignated statutory references are to the Welfare and Institutions Code.

The paternal grandmother expressed concern about mother's ability to care for the minor, due to her developmental delays. She said mother needed constant and repeated reminders and did not comprehend basic child care.

The Department recommended denying reunification services to both parents under the bypass provisions of section 361.5, subdivision (b)(7) (that the parents were not offered services for the sibling) and (11) (parental rights to the sibling had been terminated). The court sustained the allegations of the petition, except as to father's developmental delays. That allegation was eventually dismissed. The court ordered two psychological evaluations each for mother and father.

Jayson Wilkenfield, Ph.D., evaluated mother in June 2012. He assessed mother's parenting knowledge and found she lacked knowledge about elementary parenting concepts such as basic nutrition, first aid, child safety, appropriate disciplinary techniques, and child development. Dr. Wilkenfield noted mother was pleasant and cooperative, but had "considerable difficulty relating a linear history, . . . and her facility for abstract thinking and general reasoning skills were seen as conspicuously impaired." Testing suggested she was functioning in the mild range of mental retardation; "[i]ndividuals with cognitive deficits in this range usually require some degree of guidance and assistance negotiating the demands of daily living and typically have difficulty learning complex concepts." Dr. Wilkenfield did not believe mother would intentionally harm the minor, however, he did not believe she had "a realistic appreciation of what is involved in seeing to the needs of a young child on a daily basis, and [did not] think she would be able to recognize or anticipate any subtle factors that could present a risk to the minor's health or safety . . . . Her knowledge of issues related to basic parenting is quite limited as is her ability to handle any sort of complex new learning." Dr. Wilkenfield concluded mother was not "capable of understanding and retaining all she would need to know to manage the responsibilities associated with

providing for her child's safety and welfare or that she possesses the ability to transfer what she may learn from her parenting classes to her actual interactions with her child." Dr. Wilkenfield did not believe additional services would improve mother's ability to parent the minor, "as her limitations are believed to be more organic than functional and are not likely to be remediable with any sort of training or therapy."

Blake Carmichael, Ph.D., also evaluated mother in June 2012. Dr. Carmichael noted mother continued to experience anxiety, uncertainty, and frustration parenting the minor. She had little insight into the causes of her drug abuse, the triggers for her use, or ways to prevent using in the future. She also lacked insight into the circumstances underlying both her previous Sacramento County Child Protective Services (CPS) case and the current one. Dr. Carmichael also concluded mother lacked the necessary skills to care for a child. She was unable to identify the minor's needs without additional support and would likely be unable to find ways to problem-solve difficult situations. "[D]espite direct and repeated attempts to assist [mother] in caring for [the minor] over the past four months, she has not shown adequate ability to understand, retain, and apply skills necessary to care for her child." Accordingly, Dr. Carmichael concluded that even with tailored services, "it is unlikely that [mother] would benefit from services within the next six months to safely and adequately parent her young child." He further noted that her lack of insight into the reasons for CPS involvement "make it difficult for her to be able to make changes in her life and keep her child safe."

Following a jurisdictional and dispositional hearing, the minor was adjudged a dependent and reunification services were ordered for father, but bypassed for mother, pursuant to section 361.5, subdivision (b)(2) and (11). Section 361.5, subdivision (b)(2) allows for the bypass of reunification services when the parent "is suffering from a mental disability . . . that renders . . . her incapable of utilizing" reunification services.

4

At the six-month review hearing, the Department recommended an additional six months of services for father while the minor remained in foster care. The parents were living together in the maternal grandmother's home. Father was progressing well in reunification services. Despite the bypass of services for mother, she had been actively participating in services available to her, including parenting classes, general counseling, and outpatient substance abuse treatment. Mother had initiated contact with Alta California Regional Center for additional services. She was taking her prescribed medications and being assessed by Birth and Beyond for in-home services. The social worker observed father appeared very attentive to the minor. Mother seemed inexperienced and unfamiliar when handling the minor. The juvenile court ordered an additional six months of services for father and increased his visitation to unsupervised visits twice weekly. Mother was not offered unsupervised visits.

At the 12-month review hearing, the Department again recommended additional services for father.

Mother and father were still living together. Mother continued to participate in available services and had frequent supervised visits. Mother had completed a first aid class and passed the written exam. She was not participating in substance abuse treatment, but was attending 12-step meetings two times per week. Mother's interactions with the minor were appropriate, but continued to demonstrate an inability to identify the minor's basic needs. For example, mother had to be told when the minor's diaper needed changing, failed to examine him for injuries after a fall, and had to be directed when the minor needed care.

Father's visits had progressed to weekend overnight visits and all day Thursday. Father was not supposed to leave mother unsupervised with the minor at any time. By mid-June 2013, father's visits were extended to Thursday morning through Monday evening. The social worker assessed the risk of returning the minor to father as

5

moderate, primarily due to the need to improve the safety plan in regard to mother's sharing the residence. Mother indicated she understood she was not to be alone with the minor due to her inability to recognize the minor's basic needs.

The maternal grandmother disclosed that father and mother had arranged for shared parenting of the minor, resulting in mother's having sole unsupervised responsibility for the minor several times a day. The parents acknowledged this unsupervised contact with the minor was unauthorized, but they did not believe it was a risk to the minor.

Mother filed a section 388 petition requesting the juvenile court order reunification services for her. She claimed her participation in services, and benefit from them, demonstrated changed circumstances. To support this petition, mother submitted a letter from the Birth and Beyond program stating the parents were committed to caring for the minor and that there were no concerns about their role as parents. Mother also submitted a letter from the director of the minor's preschool indicating the parents appeared loving, devoted, and concerned for the minor's welfare.

Following the review hearing, the juvenile court ordered the minor returned to father. The juvenile court asked counsel whether that ruling made the section 388 petition for reunification services moot. Mother's counsel responded, "I think that to a certain extent it is. I think in terms of whether or not now that [the minor] is returned to the father there could be many services the mother could have would really be discretionary on the Court's behalf rather than reunification services, so I would just submit with those statements. Obviously the mother—I think we all have a picture of what the situation is and the mother will be there and she does have a lot of services available to her whether or not the Court makes them a specific order or not, but she will continue to participate in those whether they are part of any specific case plan or not." The juvenile court denied mother's section 388 petition "as moot in light of the Court's

6

return of the child to the father." Counsel did not object to the denial on that basis. The juvenile court also denied mother's request for family maintenance services. The court noted mother had definite limitations as a parent, despite her efforts in services. The court also made clear the minor was being returned to father and that mother's contact with the minor was visitation—visitation which was required to be supervised. Based on that ruling, the court would not authorize family maintenance services for mother.

Mother filed a notice of appeal from the court's order which "denied the mother's motion pursuant to Welfare and Institutions Code section 388 requesting reunification services be provided to the mother."

## DISCUSSION

### I. Reunification Services

Mother contends the juvenile court abused its discretion "in denying mother's request for services." She contends the section 388 petition was not moot "simply because the child was placed with father at the review hearing. Providing family maintenance services for one parent and reunification services for the other may be appropriate in certain circumstances. (*In re Calvin P.* (2009) 178 Cal.App.4th 958, 963 [reunification services ordered where reasonable services had not been provided to mother, and father had family maintenance services].)" The Department contends that mother's counsel's agreement that the section 388 petition was moot to a "certain extent" was either invited error or a forfeiture. We agree mother forfeited this issue. Moreover, we find that to the extent there may have been an error, it was harmless.

"[A] reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court. [Citation; fn. omitted.] The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected." (*In re S.B.* (2004) 32 Cal.4th 1287, 1293.) Here,

7

mother did not argue in the juvenile court that this was a case in which it would be appropriate to offer mother reunification services, while father received maintenance services. Rather, mother agreed with the court that, given the status of the case, the issue of reunification services to mother was "moot to a certain extent," and that with the return of the minor to father, mother could be offered many services other than reunification services. Mother also did not object when the juvenile court denied reunification services on the grounds that the issue was moot. Counsel's statement that the matter was moot, along with the failure to object to the ruling in the trial court, has forfeited this issue on appeal. Even if the matter was not forfeited, we would find any error harmless.

Under section 388, a parent may bring a petition for modification of any order of the juvenile court based on new evidence or a showing of changed circumstances. "The parent requesting the change of order has the burden of establishing that the change is justified. [Citation.] The standard of proof is a preponderance of the evidence." (*In re Michael B*. (1992) 8 Cal.App.4th 1698, 1703.)

Here, the order denying mother reunification services was based largely on the psychological reports indicating she would be unable to benefit from those services as a result of her mental disability. The reports indicated mother's mental disability was not functional but organic, and not likely to be remedied with training or therapy. The reports also indicated mother would not be able to recognize or anticipate the minor's needs without additional support, could not recognize potential risks to the minor, and was not capable of retaining and transferring skills she learned in parenting classes to her actual interactions with the minor. Although mother participated in a number of services, including first aid, counseling, and parenting classes, mother did not provide evidence that she had resolved the issues noted in the psychological reports. She did not present evidence she had retained the information obtained in the services, that she now understood basic child care needs or developmental stages, or that she could anticipate

8

the minor's needs or recognize risks to the minor. In fact, the evidence suggested the contrary, that mother was still unable to identify the minor's basic needs, such as needing a diaper changed or being examined for injuries after a fall. Mother also did not present any new evidence or psychological evaluations regarding her mental disability or its impact on her ability to safely parent the minor. Based on this record, it is not reasonably probable that had the juvenile court considered the petition to modify on its merits, the outcome would have been different. (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

## II. Maintenance Services

Although it is not clear, the briefing suggests mother also may be attempting to raise a claim that the juvenile court erred in denying her request for maintenance services.

The notice of appeal indicates mother is appealing only from the order denying her section 388 petition. Moreover, the claim regarding maintenance services is not presented under a separate heading nor is it supported by argument and citation to authority.

"The juvenile court's judgment is presumed to be correct, and it is appellant's burden to affirmatively show error. [Citation.] To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error. [Citations.] When a point is asserted without argument and authority for the proposition, 'it is deemed to be without foundation and requires no discussion by the reviewing court.' [Citations.] Hence, conclusory claims of error will fail. [¶] In addition, appellant's brief 'must' '[s]tate each point under a separate heading or subheading summarizing the point. . . .' [Citations.] This is not a mere technical requirement; it is 'designed to lighten the labors of the appellate tribunals by requiring the litigants to present their cause systematically and so arranged that those upon whom the duty devolves of ascertaining the rule of law to apply may be advised, as they read, of the exact question under consideration, instead of being

9

compelled to extricate it from the mass.' " (*In re S.C.* (2006) 138 Cal.App.4th 396, 408; see also Cal. Rules of Court, rule 8.204(a)(1)(B).) "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as" forfeited. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785.) Accordingly, we decline to address any claim regarding maintenance services.

## DISPOSITION

The orders of the juvenile court denying mother reunification and maintenance services are affirmed.

     BUTZ     , J.

We concur:

   NICHOLSON   , Acting P. J.

   MURRAY   , J.