Filed 4/3/1  D.T. v. Superior Court CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| D.T.,<br><br>     Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF CONTRA COSTA COUNTY,<br><br>     Respondent;<br><br>CONTRA COSTA COUNTY CHILDREN & FAMILY SERVICES BUREAU,<br><br>     Real Party in Interest. | A143935<br><br>(Contra Costa County<br>Super. Ct. No. J12-00377) |

**INTRODUCTION**

The minor M.I. was made a dependent of the juvenile court.  His mother, D.T. (mother) received 18 months of reunification services, but failed to reunify with him.  The juvenile court selected long-term foster care as M.I.'s permanent plan.  At a subsequent status review hearing, the Contra Costa County Children and Family Services Bureau (the Bureau) recommended a new permanent plan selection hearing to consider legal guardianship as M.I.'s permanent plan.  Mother objected and requested a contested hearing.  At the hearing, through counsel, she made an oral motion pursuant to Welfare and Institutions Code section 388[1] to change the court's prior order terminating

_____

[1] All further unspecified statutory references are to the Welfare and Institutions Code.

1

reunification services and to reinstate services for six more months. The juvenile court denied the section 388 motion and set a section 366.26 hearing.

Mother seeks extraordinary relief from these orders. She contends the juvenile court abused its discretion in denying her section 388 petition because she established both changed circumstances and that granting her additional services would be in M.I.'s best interest. She also contends she was not offered reasonable services geared toward her mental health condition.

We issued an order to show cause. We find no error and deny the petition on the merits.

## FACTUAL AND PROCEDURAL BACKGROUND

Five-year-old M.I. was detained in March 2012 after mother was placed on a psychiatric hold. A section 300 juvenile dependency petition alleged that mother had significant mental health issues that interfered with her ability to take care of him.[2] In the initial detention report, the social worker reported that "[m]other is schizophrenic with a history of psychiatric hospitalizations, and her thinking is not clear at times." There had been nine prior referrals for M.I., starting when he was born. The court sustained the petition and placed M.I. in foster care.

The social worker who prepared the Bureau's disposition report reported that mother acknowledged "the importance of continued stabilized mental health in providing adequate care and supervision" for M.I. She visited M.I. every other week, but the visits were "very hard on the child as well as mother and staff." M.I. had "terror outbursts" and defiant behavior before, during, and after visits. Two staff people were required to keep visits under control. Mother believed her mental health had stabilized and that she was ready to resume caring for M.I.

---

[2] The petition also alleged that M.I.'s father Richard I. (father) placed M.I. at substantial risk of harm by leaving him in mother's care while he knew or should have known that she was psychiatrically incapable of caring for the child. Father is not a party to this writ petition. Facts pertaining to father will only be included to the extent they have bearing on mother's writ petition.

The court appointed a guardian ad litem for mother in May 2012.

At the dispositional hearing, the court adjudged M.I. a dependent and ordered reunification services. Mother's case plan included counseling, psychotropic medication evaluation and monitoring, and therapeutic day treatment services. The court amended her case plan to require that she undergo a mental health assessment and follow the recommendations from the assessment.

By memorandum dated August 28, 2012, the Bureau advised the court that mother had made some progress on her case plan, including completing a parenting program and participating in mental health treatment through Kaiser's psychiatry department. However, Kaiser had rejected the request for a mental health assessment for reasons including that mother had already had one in the past, and she had a diagnosis.[3] The social worker was processing a request for mother to get an outside assessment.

Mother continued to visit with M.I. During early visits, M.I. would curse and kick mother and become uncontrollable. He would often run out of the room and throw tantrums. There often had to be two adults present during visits to supervise. Staff had to continually intervene, redirect M.I.'s behavior, and remind mother not to discuss the dependency case in front of M.I. Mother made no attempt to correct M.I.'s behavior. Staff often had to redirect mother to focus on M.I. during visits. The Bureau referred mother and M.I. for therapeutic visitation services. Mother and M.I. had four therapeutic visits, starting in July 2012. However, the provider terminated the sessions because mother would not actively participate in the treatment process.

Mother's behavior was combative and confrontational. She contacted the social worker and other Bureau employees several times a day and night, "leaving urgent messages such as bible quotes, Christian music, verbal delusions, conspiracies between the courts, child welfare and the police," and fragmented statements. She would become verbally combative and accused the Bureau of working fraudulently with other agencies to keep her son from her. The foster mother reported that mother called her daughter's

_____

[3] Mother was diagnosed with schizoaffective disorder.

cell phone at all hours of the night and had "cursed her teenaged daughter out." The social worker's assessment was that mother displayed minimal effort to comply with her case plan.

The Bureau's six-month status review report indicated that M.I. was in a second foster home and appeared to be adjusting well. The first placement ended because of M.I.'s aggressive behavior. M.I. was experiencing "great difficulties with peer behaviors." His kindergarten teacher reported that he consistently disrupted the class, was verbally and physically abusive toward her and the other children, and had to be "sent to the office on a constant basis." He would soon be starting therapy.

Mother had made some progress with her case plan, but she fired her psychiatrist when he reportedly questioned her behavior and motives to regain custody of M.I. Although mother was taking her medication, she still displayed paranoid behavior and her judgment was "severely impaired."

M.I.'s behavior was improving at visits; he was better at not calling his mother names or trying to hit her. Mother persisted with erratic and disturbing behavior, repeatedly accusing the Bureau of misconduct and obsessively discussing alleged molestation of M.I. She frequently had to be redirected to focus on M.I. She brought other people to the visits despite being told not to do so. She showed up for one visit disheveled, with a black eye, swollen cheek, and a cut on her lip. She reported that she was assaulted by her adult son, whom she brought to a visit with M.I. about a month later without notifying the social worker. She repeatedly asked M.I. about sexual molestation and homosexuality.

The Bureau reported that mother had not developed any insight, nor did she take any responsibility for M.I. being detained. She believed that M.I. should be returned to her care. The Bureau recommended six more months of services. The court found that reasonable services had been provided or offered, and continued those services.

In its report to the court for the 12-month status review, the Bureau recommended that reunification services be terminated and the matter be set for a section 366.26 hearing. Although mother remained compliant with her medication and demonstrated

4

effort in working on her treatment goals, she continued to feel she had done nothing to put M.I. at risk. She continued to behave erratically at visits. On one occasion, her behavior was so disruptive she had to be escorted out of the building by a public safety officer.

At the 12-month review hearing in July 2013, the court declined to follow the Bureau's recommendation to terminate services. Instead, it found reasonable services had been provided or offered, and continued mother's services to the next review date.

In its report for the 18-month review hearing, the Bureau again recommended terminating services and ordering a plan of long-term foster care for M.I. Mother continued to visit consistently, but M.I. was still acting out by cursing and hitting her. Mother was unable to control his behavior and made little effort to do so. The Bureau reported that mother continued to lack insight into the issues that resulted in M.I.'s detention and her mental health was still of great concern. M.I.'s attorney requested that the Bureau look for a concurrent home for him. The Bureau assigned a social worker to assess his permanent placement needs.

Following an 18-month contested permanency review hearing (Welf. & Inst. Code, § 366.22) on October 28, 2013, the court found by clear and convincing evidence that reasonable services had been offered or provided, concluded that the conditions prompting dependency remained unchanged, and terminated reunification services. The court ordered that M.I. remain in long-term foster care.

The court held a permanent plan review hearing in April 2014. The Bureau recommended continuing the plan of long-term foster care for M.I. The report indicated that M.I. was doing well in his placement and was responding well to the consistency and structure his caregiver was providing. Mother continued to visit M.I., but continued to display a lack of skills to interact appropriately with him. The court followed the Bureau's recommendations and continued the plan of long-term foster care for M.I.

The next review hearing was set for October 2014. The Bureau was still worried about mother's mental health. She frequently left voicemail messages for the social worker "at odd hours" expressing confusion about why M.I. was removed from her care.

5

She would leave four or five messages in succession, and they would eventually "decompensate into disconnected tangential iterations." The Bureau continued to assess mother "as being incapable of providing a safe and stable home for a young child."

The Bureau recommended continuing the plan of long-term foster care for M.I. M.I. was thriving socially and academically. His school provided positive reports regarding his behavior and academic progress. M.I.'s caregiver had expressed interest in assuming legal guardianship of M.I. The court observed that M.I. was doing well in his placement and at school. The court asked the Bureau to address the caregiver's willingness to provide permanency and continued the matter.

The Bureau submitted a memorandum to the court for the continued hearing, confirming that the caregiver wished to pursue legal guardianship. The memorandum also recounted a recent incident in which mother loaned her car to father and then contacted the police and the Bureau, reporting the car as stolen. The Bureau recommended that a section 366.26 hearing be set and that M.I.'s permanent plan be changed from long-term foster care to legal guardianship. Mother objected and requested a contested hearing.

At the contested hearing on January 5, 2015, mother's counsel made an oral section 388 request to change a court order, seeking to reinstate family reunification services for mother and grant her an additional six months of services. The court considered the evidence and arguments of counsel, and determined that the evidence did not support reinstating services. The court denied the section 388 petition and set a section 366.26 hearing.

This timely petition followed that ruling.

## DISCUSSION

A.    *The Order Denying Mother's Section 388 Petition*.

Mother contends the juvenile court erred in denying her section 388 petition because she established that her mental health was much improved and stabilized, constituting changed circumstances, and that reinstating services was in M.I.'s best interest because of the strong parent-child bond between mother and M.I.

6

Mother's counsel supported her section 388 petition with a letter from Kaiser regarding mother's compliance with her mental health treatment plan and medication, a certificate from an adult education typing program, and a daytime vocational training center form indicating that mother was engaged in a job skills program. Mother's counsel also pointed out that mother complied with her case plan and maintained a stable residence throughout the dependency. Counsel for the minor and the Bureau argued in opposition to granting the petition. The court concluded that the "evidence does not support the Court reversing its prior order and resuming services to Mother at this time. In fact, I think to do so would be contrary to the interest of the child, who deserves permanence."

After reunification services are terminated, the focus of dependency proceedings shifts from the parent's interest in the care, custody, and companionship of the child to the child's need for permanence and stability. (*In re Stephanie M*. (1994) 7 Cal.4th 295, 317.) Even after this shift, a court may address a legitimate change in circumstance while protecting the child's need for prompt resolution of his or her custody status. (*In re Marilyn H*. (1993) 5 Cal.4th 295, 309.) A juvenile court order can be modified pursuant to section 388 if the parent seeking the change can establish changed circumstances or new evidence supporting the modification, and can also establish the change is in the child's best interest. (*In re Michael B*. (1992) 8 Cal.App.4th 1698, 1703.) The parent requesting the change bears the burden of proving by a preponderance of the evidence that the change is justified. (*Ibid*.)

The denial of a section 388 petition is reviewed for abuse of discretion. (*In re Stephanie M*., *supra*, 7 Cal.4th at pp. 318-319.) The juvenile court's ruling will not be disturbed on appeal unless the decision is arbitrary, capricious, or patently absurd. (*Ibid*.) "It is rare that the denial of a section 388 motion merits reversal as an abuse of discretion . . . ." (*In re Kimberly F*. (1997) 56 Cal.App.4th 519, 522.)

This is not that rare case. Here, the juvenile court determined there was not sufficient evidence produced at the hearing to establish that reinstating services for six more months was in M.I.'s best interests. The evidence before the court showed that M.I.

7

was stable and thriving in his placement. The social worker noted it was "apparent that [M.I.] feels safe in the placement, and that he has begun to thrive as evidenced by his progress both socially and academically." His behavior at school showed "dramatic improvement," and staff there were beginning to incorporate him into a mainstream classroom. This is in marked contrast to earlier reports. When M.I. was first removed, he had "terror outbursts and defiant behaviors" before, during and after visits with mother, and there had to be two staff people on hand to keep the visits under control. At the six-month review, his original foster placement had ended because he hurt a younger child; at school, he was disruptive and verbally and physically abusive toward his teacher and the other children.

Now, approximately three years after M.I. was removed from mother, and after mother received more than 18 months of services, M.I. is described as stable and thriving. He has been in his current foster home for well over two years, and the caregiver wishes to provide him with a more permanent plan. Mother has not demonstrated that it would serve M.I.'s best interests to grant her more services, shifting the focus of the proceedings back to her interest in reunification while delaying permanence and stability for M.I. (See *In re Stephanie M.*, *supra*, 7 Cal.4th at p. 317.) The juvenile court did not abuse its discretion in denying the request for additional services.

B.       *Sufficiency of Reunification Services*.

Mother contends the juvenile court's denial of her section 388 petition was an abuse of discretion for the additional reason that it "failed to properly consider the legal insufficiency of the reunification services" provided by the Bureau.[4] (Capitalization

---

[4] Mother's services here were focused on her mental health issues and included counseling, medication, other therapeutic services, and case management by the provider, Kaiser's psychiatry department. Mother engaged with the services, and the social worker maintained regular contact with mother's case manager. It appeared that mother's erratic behavior improved over time. However, the Bureau's assessment was, and remained, that "due to cognitive/psychological barriers," mother lacked insight into the reasons for the dependency, her judgment was impaired, and she was "incapable of providing a safe and stable home environment for a young child." The juvenile court made findings three times, at the 6, 12, and 18-month review hearings pursuant to section 366.21, that

8

omitted from quote.)  Specifically, mother argues that, although her case plan included a mental health assessment, the Bureau never provided one.  She also faults the Bureau for failing to provide "any specialized parenting classes such as a 'modeling' class for adults with mental health issues."  The argument has no merit.

First, with respect to the mental health assessment, mother did not raise this issue at the hearing on her section 388 petition.  There, she argued that her previous services were inadequate "given her mental health needs," and she focused on not having had "any sort of specialized parenting classes, such as a modeling class . . . for adults that actually have mental illness or mental health issues, so that she could see parenting firsthand and have a better handle on how she could approach parenting [M.I.]."  We will not address a matter raised for the first time on appeal.

Second, mother failed to raise any issue regarding the adequacy of reunification services during the reunification period.  Reunification services were terminated at the 18-month review hearing in October 2013, and M.I. remained in long-term foster care for another year.  During the entire time reunification services were provided and the year following their termination, mother did not challenge her services.  She did not raise any issue regarding the adequacy of services until the January 2015 hearing.  The argument is not timely.  (See *In re Christina L.* (1992) 3 Cal.App.4th 404, 416 [parent did not raise adequacy of services until proceeding to free child from parental custody under former Civ. Code, § 232; "the reunification period had already long passed, along with the opportunity to timely correct any inadequacies"].)

Moreover, the hearing conducted on January 5, 2015, was held pursuant to section 366.3.  This section provides that a child in long-term foster care shall have his or her status reviewed every six months.  (§ 366.3, subd. (d).)[5]  At the review every six months, the reviewing body "shall inquire about the progress being made to provide a permanent

_____

reasonable services were provided or offered to mother.  Mother never challenged these findings.

[5] The review may be conducted by the court or an appropriate local agency, but the court must conduct the review at least every 12 months.  (§ 366.3, subd. (d).)

9

home for the child, shall consider the safety of the child, and shall determine . . . [t]he continuing necessity for, and appropriateness of, the placement. . . ." (§ 366.3, subd. (e).) When the court conducts the review, section 366.3, subdivision (h), provides in relevant part: "the court shall consider all permanency planning options for the child including whether the child should be returned to the home of the parent, placed for adoption, . . . or appointed a legal guardian, or, if compelling reasons exist for finding that none of the foregoing options are in the best interest of the child, whether the child should be placed in another planned permanent living arrangement. The court shall order that a hearing be held pursuant to Section 366.26, unless it determines by clear and convincing evidence that there is a compelling reason for determining that a hearing held pursuant to Section 366.26 is not in the best interest of the child because the child is being returned to the home of the parent, the child is not a proper subject for adoption, or no one is willing to accept legal guardianship."

Thus, when a child is in long-term foster care, his or "her status shall be reviewed every six months to make sure efforts are continuously being made to find [him or] her a more permanent placement." (*Sheri T. v. Superior Court* (2008) 166 Cal.App.4th 334, 340.) The court is directed to set a section 366.26 hearing unless there is clear and convincing evidence that such a hearing is not in the child's best interest. It is the parent's burden to prove that setting a section 366.26 hearing would not be in the child's best interest. (*Sheri T. v. Superior Court*, *supra*, 166 Cal.App.4th at p. 341.)

Mother did not carry her burden of proving that setting a section 366.26 hearing was not in M.I.'s best interest. M.I.'s caregiver was willing to accept legal guardianship. (§ 366.3, subd. (h).) Further, the Bureau reported that M.I. was thriving in his placement and was making strong progress at school. And as the juvenile court noted, "legal guardianship . . . is not a termination of parental rights, it's simply appointing someone to stand in as legal guardian for [M.I.], which is much more appropriate than a recommendation of long-term foster care for a child of his age. He's a little boy and he deserves that permanence."

10

The cases mother relies upon are not to the contrary. She cites cases that stand for the settled proposition that reunification services must be appropriate for each family and must take into account the special needs of parents who are mentally ill. (See *In re Elizabeth R.* (1995) 35 Cal.App.4th 1774, 1792; *In re Dino E.* (1992) 6 Cal.App.4th 1768, 1777.) She also relies on *In re Daniel G.* (1994) 25 Cal.App.4th 1205, 1216 (*Daniel G.*) and *In re Calvin P.* (2009) 178 Cal.App.4th 958 (*Calvin P.*), both of which involved appeals of the issue of reasonable reunification services following the termination of such services. The juvenile court in *Daniel G.* described the reunification services offered to the mother as a " 'disgrace,' " but believed it had no choice but to terminate services at the 18-month hearing. *Daniel G.* held the juvenile court had discretion to order additional reunification services beyond the 18-month hearing if there was reason to believe that additional services might lead to reunification, and if the benefits of reunification were not outweighed by the child's need for prompt resolution. (25 Cal.App.4th at p. 1216.)[6] Here, the court terminated services at the 18-month review hearing after finding that reasonable services had been provided; there is no indication in the record of any argument for services to be continued past the 18-month point. In *Calvin P.*, reunification services were ordered for the mother, but the agency disregarded the order and instead required family maintenance services when the children were placed in the father's custody. (178 Cal.App.4th at p. 962.) The appellate court ordered that mother receive reunification services, holding that if a court exercises its discretion to order a reunification case plan for a parent, the agency must follow through and provide reasonable reunification services. (*Id.* at p. 964.) Here, there was no dispute that

---

[6] But see *Mark N. v. Superior Court* (1998) 60 Cal.App.4th 996, 1017, footnote 10, disagreeing with *Daniel G.*, *supra*, 25 Cal.App.4th at pages 1211-1215, "insofar as it holds the juvenile court has discretion under section 366.22, subdivision (a), at the 18-month review stage, not to order a section 366.26 hearing if it finds reasonable reunification services have not been offered or provided;" concluding that "the discretion lies, instead, in granting a continuance of the 18-month hearing pursuant to section 352. [Citations.]"

mother received reunification services, and the juvenile court made findings that those services were reasonable.

On this record, the trial court did not abuse its discretion in denying mother's section 388 petition, and did not err in setting the section 366.26 hearing.

## DISPOSITION

The petition is denied on the merits.  (Rule 8.452(h)(1).)  Our decision is final as to this court immediately.  (Rule 8.490(b)(2)(A).)

_____
Miller, J.

We concur:

_____
Richman, Acting P.J.

_____
Stewart, J.

12