Filed 1/15/16  In re Mohammed A. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re MOHAMMED A., a Person Coming Under the Juvenile Court Law. | B263286 |
| | (Los Angeles County Super. Ct. No. DK04171) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| THERESA A., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Debra Losnick, Commissioner.  Affirmed.

Roni Keller, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Dawyn R. Harrison, Assistant County Counsel, Jessica S. Mitchell, Deputy County Counsel, for Plaintiff and Respondent.

One-year-old Mohammed A. was removed from Theresa A.'s (mother) care after she threatened to commit suicide. Mohammed was subsequently declared a juvenile court dependent and placed in the custody of Ali M. (father). At the six-month review hearing, the trial court terminated jurisdiction and entered a family law order providing father physical and legal custody of Mohammed. No visits were ordered for mother. Mother appeals. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Petition*

On March 11, 2014, the Department of Children and Family Services (Department) received a referral alleging that Mohammed was in police custody. Mother had thrown father out of the house and then threatened to kill herself. The police had detained Mohammed, and mother was placed on an involuntary psychiatric hold.

The Department filed a petition alleging that mother "has mental and emotional problems including suicidal and homicidal ideation, which renders [her] unable to provide regular care of the child." The Department later amended the petition to add an allegation that mother "has an extensive criminal history including five felony and four misdemeanor convictions" for vandalism, burglary, grand theft and solicitation for murder, among other crimes. "Such extensive criminal history . . . endangers the child's physical health and safety and places [him] at risk of physical harm, damage, [and] danger." At the detention hearing on March 18, 2014, the court released Mohammed to father and ordered monitored visits for mother.

2. *The Jurisdictional and Dispositional Hearing*

After several continuances, the jurisdictional and dispositional hearing was held on September 15, 2014. The court sustained the petition's allegations against mother and ordered family reunification services for her and maintenance services for father.[1] Mother was also ordered to participate in counseling and allowed monitored visitation.[2]

_____

[1]     "[F]amily reunification services are activities designed to provide time-limited foster care services to prevent or remedy neglect, abuse, or exploitation, when the child cannot safely remain at home, and needs temporary foster care, while services are

2

3.    *The Welfare and Institutions Code Section 388 Petitions*

In December 2014, the Department reported that social workers had "witnessed several emotional outbursts from [mother] . . . ." Father had failed to make Mohammed available for two visits and arrived late to a third, and on each occasion mother "was extremely angry," "ma[de] incessant telephone calls to the [social workers] . . . [and] engaged in angry yelling . . . ." The directors of a program where mother attended parenting classes also reported that mother was "confrontational, inappropriate and illogical."

In January 2015, the Department filed a section 388 petition[3] asking the court to terminate mother's visitation on the ground that mother "ha[d] consistently demonstrated unsafe behavior during monitored visits." The petition alleged that mother had repeatedly ignored traffic signals while carrying Mohammed across the street and had "yell[ed], argu[ed], and harangu[ed] [during many] visits in front of [Mohammed]." The petition further alleged that mother repeatedly threatened the monitors during her visits with Mohammed. Maternal grandmother, who had been acting as a monitor, said mother had threatened to kill her. At a monitored visit at a police station, mother told the social workers present that she was "going to post [their] pictures so that everyone will know that you are bad people!" Two other social workers reported that mother had "threatened

---

provided to reunite the family." (Welf. & Inst. Code, § 16501, subd. (h).) "[F]amily maintenance services are activities designed to provide in-home protective services to prevent or remedy neglect, abuse, or exploitation, for the purposes of preventing separation of children from their families." (Welf. & Inst. Code, § 16501, subd. (g).)

All further statutory references are to the Welfare and Institutions Code.

[2]    Mother appealed the jurisdictional and dispositional orders, and her counsel filed a brief under *In re Phoenix H.* (2009) 47 Cal.4th 835 that raised no issues. We dismissed the appeal by order dated June 4, 2015.

[3]    Section 388 provides that "[a]ny parent or other person having an interest in a child who is a dependent child of the juvenile court . . . may, upon grounds of change of circumstance or new evidence, petition the court . . . for a hearing to change, modify, or set aside any order of court previously made . . . ."

3

to publish negative things about them." Those individuals had subsequently found extensive complaints posted about them online, accusing them of child abuse. One social worker received a text message from mother asking her "if [the social worker] knew what [mother] ha[d] done to the other workers" and saying "mother is capable of doing things to her." Mother also threatened her attorney, "saying she knew where he lived, among other things, causing him to call 911 for his own safety."

On January 16, 2015, Mohammed "appeared frightened when he saw . . . mother and was crying hysterically." During the visit, which took place at the Department's office, mother "yell[ed], scream[ed] and ma[d]e threats in the presen[ce] of the child." Mother also told clients and children waiting in the lobby to "look up online for things she posted about [the social workers]."

In anticipation of the court's decision terminating her visitation, mother filed a section 388 petition asking the court to continue to allow her monitored visits. The court set a hearing on both section 388 petitions and suspended mother's visits with Mohammed pending the hearing.

4. *The Review Hearing*

On March 24, 2015, the court heard the section 388 petitions and held a six-month review hearing pursuant to section 364.[4] The court received several of mother's exhibits into evidence but declined to review videos of two 2014 visits between mother and Mohammed on the ground "they [we]re too remote in time . . . ." Mother's psychologist testified, stating that mother "exhibited no risk factors" during psychotherapy sessions. However, the psychologist also stated she would not be surprised to learn that other professionals had described mother as "aggressive, threatening, and inappropriate."

After considering the testimony, documentary evidence, and argument, the court granted the Department's section 388 petition terminating mother's visitation and denied mother's section 388 petition. The court concluded "there is no longer a need for me to

---

[4] Section 364 provides that if an order is made placing a child under the supervision of the juvenile court pursuant to section 300 and the child is not removed from the physical custody of the parent, the court shall hold a review hearing in six months.

supervise this case" and terminated jurisdiction, issuing a family law order providing father full physical and legal custody of Mohammed. No visits were ordered for mother. Mother timely appealed.

## CONTENTIONS

Mother contends the court erred in (1) declining to admit into evidence the videos of mother's 2014 visits with Mohammed, (2) applying the wrong legal standard at the six-month review hearing, (3) failing to make a finding as to whether mother was offered reasonable services, and (4) denying mother visitation.[5]

## DISCUSSION

1. *Applicable Law*

The parties agree that section 361.2 applies here. Section 361.2 provides: "When a court orders removal of a child pursuant to Section 361, the court shall first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child. If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child."

"Once the juvenile court places a minor with a previously noncustodial parent in accordance with [section 361.2] . . . it may order that the previously noncustodial parent 'assume custody' of the minor subject to the supervision of the juvenile court. (§ 361.2, subd. (b)(3).) If the court [does so], it 'may order that . . . services be provided to both parents, in which case the court shall determine, at review hearings held pursuant to Section 366, which parent, if either, shall have custody of the child.' (§ 361.2, subd. (b)(3).)" (*In re Jaden E.* (2014) 229 Cal.App.4th 1277, 1281-1282, fn. omitted (*Jaden E.*).)

___

[5] Mother's brief also contains one sentence arguing that her constitutional rights were violated "when [she] was not afforded a hearing on her section 388 petition." However, the court did hold a hearing on mother's section 388 petition and allowed mother to present evidence and argument at that hearing.

2.      *The Court Did Not Abuse Its Discretion in Declining to Admit the Videos Into Evidence*

"The trial court is vested with broad discretion in ruling on the admissibility of evidence.  [Citations.]  ' "[T]he court's ruling will be upset only if there is a clear showing of an abuse of discretion." '  [Citation.]  ' " 'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason.' " '  [Citation.]" (*In re Jordan R.* (2012) 205 Cal.App.4th 111, 121.)

Mother contends the juvenile court abused its discretion in excluding the videos of her 2014 visits with Mohammed.  We do not agree.  The court's decision was based on the "remote" nature of those videos, which had been taken a year before the section 388 hearing.  The videos' relevance was limited by the events that followed, namely mother's conduct during more recent visits.  Therefore, the court did not abuse its discretion in declining to admit the videos into evidence.

Mother has also not shown that the court's decision constituted a miscarriage of justice warranting reversal of the court's visitation order.  (*In re Nickolas T.* (2013) 217 Cal.App.4th 1492.)  Here, there was an abundance of evidence supporting the court's decision to terminate mother's visitation.  Even if the court had reviewed the subject videos showing "the positive nature of [mother's] visitation with [Mohammed]," given the events following those visits – including mother's yelling, screaming and threatening others in front of Mohammed, mother's violent threats to others, and Mohammed's frightened reaction to mother – there is no reasonable possibility the court would have reached a different decision.  (*In re Celine R.* (2003) 31 Cal.4th 45, 59 [applying the "reasonable probability" harmless error test in assessing whether error in juvenile court proceeding constituted a reversible miscarriage of justice].)

3.      *The Court's Reference to Section 364 Was Harmless Error*

Mother contends the court should have conducted the six-month review hearing pursuant to section 366.21, subdivision (e), instead of section 364.  The Department concedes that section 366.21 governed the review hearing, but contends that any error was harmless.

6

Section 364 governs the conduct of hearings when a dependent child remains placed with the custodial parent. It "is inapplicable when . . . a child has been removed from one parent and placed with the other under section 361.2, subdivision (a). [Citations.] [¶] . . . [S]ection 361.2, subdivision (b)(3) specifically directs that when a child is placed with a noncustodial parent and both parents are ordered to participate in services, review hearings must be 'held pursuant to section 366.' " (*In re Maya L.* (2014) 232 Cal.App.4th 81, 100 (*Maya L.*).) Thus, when a child is removed from a custodial parent's care, placed with a noncustodial parent under section 361.2, and both parents are ordered to participate in services, section 366.21, subdivision (e) governs the six-month review hearing. (*Maya L.*, at p. 101.) Here, it is undisputed that the court removed Mohammed from mother's custody, placed him with father under section 361.2, and ordered both parents to participate in services. Therefore, section 366.21, subdivision (e), not section 364, governed the six-month review hearing.

Although the juvenile court erroneously referenced section 364 when making its ruling at the six-month review hearing, the court did in fact follow the standards set forth in sections 366.21, subdivision (e), and 361.2, subdivision (b)(1). Section 366.21, subdivision (e) provides, "[i]f the child ha[s] been placed under court supervision with a previously noncustodial parent pursuant to Section 361.2, the court shall determine whether supervision is still necessary. The court may terminate supervision and transfer permanent custody to that parent, as provided for by paragraph (1) of subdivision (b) of Section 361.2." Subdivision (b)(1) of section 361.2 provides that, if the court places a child with the previously noncustodial parent, the court may "[o]rder that the parent become legal and physical custodian of the child."

Here, after hearing the parties' evidence, the court found that juvenile court supervision of Mohammed was no longer necessary and then entered a family law order providing father full physical and legal custody of the child. Because the court's orders demonstrate it applied the standards set forth in sections 366.21, subdivision (e), and 361.2, subdivision (b)(1), any error in referencing section 364 was harmless. (See *Maya L.*, *supra*, 232 Cal.App.4th at p. 101 [holding the juvenile court's reference to

7

section 364 at the six-month review hearing to be harmless error where the court found there was no longer a need for supervision of the minor and entered a family law order providing the previously noncustodial parent with full custody].)

4. *The Court Was Not Required to Make a Finding About Whether Mother Was Provided With Reasonable Services*

Mother contends the court erred in failing to make a finding as to whether she was provided reasonable services. Relying on *In re Calvin P.* (2009) 178 Cal.App.4th 958 (*Calvin P.*), mother contends that when a juvenile court has exercised its discretion and ordered reunification services to the previously custodial parent while placing a minor with a noncustodial parent, the court must decide whether the Department complied with that order. However, *Calvin P.* is inapposite because it involved an order for mandatory reunification services pursuant to section 361.5.[6]

In *Calvin P.*, the minors were removed from father's custody,[7] and both parents were provided with reunification services pursuant to section 361.5. (*Calvin P.*, *supra*, 178 Cal.App.4th at p. 960.) The court later placed the children with father with family maintenance services. (*Id.* at p. 961.) At the six-month review hearing, the court concluded that whether mother had received reasonable reunification services was a moot issue because the children had been placed with father. (*Ibid.*) Mother appealed and the Court of Appeal held that mother was entitled to reasonable reunification services. (*Id.* at p. 964.)

Unlike in *Calvin P.* where reunification services were ordered under section 361.5, here the court provided mother with reunification services pursuant to section 361.2, subdivision (b)(3). "[C]hild welfare services provided herein pursuant to subdivision (b)(3) of section 361.2 [a]re wholly discretionary and analytically distinct from the mandatory reunification efforts required by section 361.5. [Citations.]"

---

[6] Section 361.5 provides for the provision of reunification services to the parents of dependent children.

[7] The minors had previously been removed from mother's custody in a separate case.

8

(*Jaden E.*, *supra*, 229 Cal.App.4th at p. 1285.) "Unless an express exemption exists, reunification services provided pursuant to section 361.5 are mandatory, subject to strict timelines, and monitored through periodic court reviews at which parents are admonished that failure to participate successfully in reunification efforts could lead to the termination of their parental rights. (§§ 361.5, 366.21, 366.22.) [¶] . . . [Section 361.2], however, provides an alternate track for minors who are removed from a parent when a previously noncustodial parent is available and requests custody of the child." (*Id.* at p. 1281.)

Contrary to mother's assertion, "where . . . a dependent minor is not removed from the custody of both parents at the dispositional hearing and services are provided pursuant to subdivision (b)(3) of section 361.2 . . . no reasonable services finding need be made at the periodic review hearings monitoring that placement." (*Jaden E.*, *supra*, 229 Cal.App.4th at pp. 1287-1288, fn. omitted.) Accordingly, here, because the court placed Mohammed with father and provided mother with services pursuant to section 361.2, the court was not required to make a finding at the six-month review hearing that mother had received reasonable reunification services. Furthermore, any failure to provide adequate reunification services to mother would not have prevented the court from terminating jurisdiction under section 361.2. (See *In re Janee W.* (2006) 140 Cal.App.4th 1444, 1455 ["the failure to provide adequate reunification services to the other parent does not prevent the court from terminating jurisdiction under section 361.2"].)

5. *The Court Did Not Abuse Its Discretion in Terminating Mother's Visitation*

Mother contends the court abused its discretion in terminating her visitation because she had participated in services, "successfully raised the minor for the first year of his life," and had primarily positive visitation with him during the case. Mother challenges both the court's denial of her section 388 petition and the court's exit order providing no visitation for her.

Section 388 provides that the dependency court may modify a court order if circumstances have changed such that it would be in the child's best interests for a modification to be made. "Whether a previously made order should be modified rests

within the dependency court's discretion, and its determination will not be disturbed on appeal unless an abuse of discretion is clearly established." (*In re Michael B.* (1992) 8 Cal.App.4th 1698, 1704.) " 'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' [Citations.]" (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.)

Here, mother's section 388 petition did not seek to change a "previously made order"; it was filed in response to the Department's petition seeking to terminate mother's visitation and asked the court to continue visitation. As mother's petition indisputably did not show that any existing court order should be modified (but rather only addressed an anticipated future court order), the denial of the petition was not an abuse of discretion.

We also review the court's order for no visitation under the abuse of discretion standard. (*In re R.R.* (2010) 187 Cal.App.4th 1264, 1284.) When the court "terminates its jurisdiction," it "may issue . . . an order determining the custody of, or visitation with, the child." (§ 362.4.) When fashioning "exit orders" under section 362.4, the court must look to the child's best interests. (*In re John W.* (1996) 41 Cal.App.4th 961, 973.)

Mother was allowed only monitored visitation during the pendency of this case. It was during these monitored visits that mother yelled, screamed and threatened others while Mohammed was present. The record also demonstrates that just before the court suspended mother's visits, Mohammed appeared frightened of mother and cried hysterically when he saw her. It is also relevant that, outside of Mohammed's presence, mother made violent threats to others, including her mother and her attorney. These threats must be considered in the context of mother's conviction of soliciting murder. Given mother's aggressive and violent behavior and Mohammed's fearful reaction to her, the court did not abuse its discretion in finding that it was in Mohammed's best interests that mother not have visits.

10

*DISPOSITION*

The orders are affirmed.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



EDMON, P. J.


We concur:



LAVIN, J.



JONES, J.[*]



---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.