[No. A139117. First Dist., Div. Four. Sept. 19, 2014.]

In re JADEN E., a Person Coming Under the Juvenile Court Law.
SAN MATEO COUNTY HUMAN SERVICES AGENCY, Plaintiff and
Respondent, v.
KIA E., Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified
for publication with the exception of part I.

COUNSEL

Leslie A. Barry, under appointment by the Court of Appeal, for Defendant and Appellant.

John C. Beiers, County Counsel, and Peter K. Finck, Deputy County Counsel, for Plaintiff and Respondent.

OPINION

**REARDON, J.**—In this dependency appeal, Kia E. (mother) seeks relief from the juvenile court order terminating the discretionary reunification services she was receiving pursuant to subdivision (b)(3) of section 361.2 of the Welfare and Institutions Code.[1] Specifically, mother claims that the services offered to her were unreasonable and therefore termination of those services was improper. There appears to have been some confusion in the juvenile court regarding the appropriate legal standards to apply when a dependent minor has been placed with a noncustodial parent pursuant to section 361.2 and reunification services are offered to the previously custodial parent under that statute. In the published portion of this opinion, we conclude that—when a minor is placed with a previously noncustodial parent at disposition pursuant to section 361.2—a reasonable services finding need not be made at subsequent hearings monitoring that placement. Nevertheless, seeing no abuse of discretion in the juvenile court's order terminating mother's reunification services, we affirm.

## I. BACKGROUND*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## II. DISCUSSION

Mother's sole argument on appeal is that the San Mateo County Human Services Agency (Agency) failed to provide her with reasonable reunification services. Thus, she claims, the juvenile court's finding that reasonable services were offered to her was erroneous, and its subsequent order terminating those services must be reversed. She requests an order on remand that she be provided with six additional months of services. Because we conclude that

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise indicated. All rule references are to the California Rules of Court.

*See footnote, *ante*, page 1277.

a reasonable services finding need not be made at a hearing monitoring a dispositional placement with a previously noncustodial parent, we reject mother's contentions.[8]

A. *Placement with a Noncustodial Parent Pursuant to Section 361.2*

As a general rule, when a child is removed from parental custody under the dependency statutes, the juvenile court is required to provide reunification services pursuant to section 361.5 to "the child and the child's mother and statutorily presumed father." (§ 361.5, subd. (a).) The purpose of these reunification services is "to facilitate the return of a dependent child to parental custody." (*In re Jodi B.* (1991) 227 Cal.App.3d 1322, 1326 [278 Cal.Rptr. 242], italics omitted; see *In re Baby Boy H.* (1998) 63 Cal.App.4th 470, 478 [73 Cal.Rptr.2d 793] [purpose of reunification efforts is to "eliminate the conditions leading to loss of custody and facilitate reunification of parent and child" thereby furthering the "goal of preservation of family, whenever possible"].) Unless an express exemption exists, reunification services provided pursuant to section 361.5 are mandatory, subject to strict timelines, and monitored through periodic court reviews at which parents are admonished that failure to participate successfully in reunification efforts could lead to the termination of their parental rights. (§§ 361.5, 366.21, 366.22.)

■ The juvenile court law, however, provides an alternate track for minors who are removed from a parent when a previously noncustodial parent is available and requests custody of the child. Specifically, subdivision (a) of section 361.2 provides: "When a court orders removal of a child pursuant to Section 361, the court *shall first determine* whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child. If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." (Italics added.) Once the juvenile court places a minor with a previously noncustodial parent in accordance with this statute, it has three dispositional options. It may grant custody to the previously noncustodial parent and terminate dependency jurisdiction. (§ 361.2, subd. (b)(1).) It may order that a home visit be conducted within three months of the minor's new placement and that the results of that visit be provided to the court before it takes further action with respect to custody of the minor. (§ 361.2, subd. (b)(2).) Or, it may order that the previously noncustodial parent "assume custody" of the minor subject to the supervision of the juvenile court. (§ 361.2, subd. (b)(3).) If the court

---

[8] We asked for and received supplemental briefing on this issue from the parties.

chooses option three, it "may order that reunification services be provided to the parent or guardian from whom the child is being removed, or the court may order that services be provided solely to the parent who is assuming physical custody in order to allow that parent to retain later custody without court supervision, or that services be provided to both parents, in which case the court shall determine, at review hearings held pursuant to Section 366, which parent, if either, shall have custody of the child."[9] (§ 361.2, subd. (b)(3).)

The interplay between section 361.5 and section 361.2—which were enacted simultaneously by the Legislature in 1986—has been the subject of some discussion in the courts. (See, e.g., *In re Adrianna P.* (2008) 166 Cal.App.4th 44, 53–54 [81 Cal.Rptr.3d 918]; *In re Janee W.* (2006) 140 Cal.App.4th 1444 [45 Cal.Rptr.3d 445] (*Janee W.*); *In re Erika W.* (1994) 28 Cal.App.4th 470, 475 [33 Cal.Rptr.2d 548] (*Erika W.*); see also Stats. 1986, ch. 1122, §§ 12, 13, pp. 3982–3986.) In *Erika W.*, for instance, the Sixth District Court of Appeal concluded that mandatory reunification services pursuant to section 361.5 need not be provided to a previously custodial parent when a child is removed from that parent and placed in the custody of a previously noncustodial parent. (*Erika W., supra,* at pp. 475–476.) Under these "limited" circumstances the court held, section 361.2 "invests the juvenile court with discretion as to the provision of reunification services to the parents." (*Erika W., supra,* at p. 475.) The *Erika W.* court reasoned that—since both statutes were part of the same legislative act—"the only rational intent which can be ascribed to the Legislature is the intent to enforce *a different set of rules regarding the provision of reunification services* in those cases where custody of a minor is shifted from one parent to another parent." (*Erika W., supra,* at p. 475, italics added; see *ibid.* ["we find it impossible to conclude that section 361.5 intended to make mandatory that which simultaneously enacted section 361.2 . . . explicitly made discretionary"].)

In *In re Nicholas H.* (2003) 112 Cal.App.4th 251 [5 Cal.Rptr.3d 261] (*Nicholas H.*), Division Two of the First District Court of Appeal was faced with a situation similar to that at issue in the present case. In those proceedings, Nicholas was removed from his mother, Kimberly, and placed in the home of Thomas, his presumed father. Both parents were given services. (*Id.* at p. 257.) At a subsequent hearing, the court terminated mother's reunification services, granted sole physical custody of Nicholas to Thomas, and dismissed dependency. (*Id.* at p. 258.) Kimberly argued on appeal that the juvenile court was required to return Nicholas to her care at the review

---

[9] Section 366 provides, in relevant part, that "[t]he status of every dependent child *in foster care* shall be reviewed periodically as determined by the court but no less frequently than once every six months, as calculated from the date of the original dispositional hearing, until the hearing described in Section 366.26 is completed." (§ 366, subd. (a)(1), italics added.)

hearing at issue, absent a finding that to do so would create a substantial risk of detriment to Nicholas's safety, protection, or physical or emotional well-being. (*Id.* at p. 262.) Such a detriment finding is required at six-, 12- and 18-month review hearings when a minor has been placed in foster care and reunification services are provided pursuant to section 361.5. (See §§ 366.21, subds. (e) & (f), 366.22, subd. (a).)

The appellate court disagreed. Although it confirmed that review hearings are to be held pursuant to section 366 when a child is placed with a previously noncustodial parent in accordance with section 361.2, it concluded that this was simply to ensure that "dependent children who have been placed with a previously noncustodial parent rather than in foster care also receive meaningful and expeditious periodic review of their cases." (*Nicholas H., supra,* 112 Cal.App.4th at p. 265.) The court went on to reject the view that the procedures prescribed by section 366 et seq. (including the detriment finding required by §§ 366.21 and 366.22) "must be rigidly applied and followed verbatim when the status review is of a child who has not been placed in foster care." (*Nicholas H., supra,* at p. 265.) Noting that "[a] parent placement poses very different considerations for the juvenile court than does a foster care placement" and that "those considerations must govern any reasonable interpretation of section 366 et seq. as it applies to dependent children who have been placed with a previously noncustodial parent," the court concluded that no detriment finding was necessary. (*Id.* at p. 265; see *id.* at pp. 265–267.)

Instead, the *Nicholas H.* court held that the issue to be resolved at a hearing reviewing placement with a noncustodial parent is expressly stated in section 361.2, itself. (*Nicholas H., supra,* 112 Cal.App.4th at p. 267.) Specifically, that statute "directs that 'at review hearings held pursuant to Section 366,' the court must determine 'which parent, if either, shall have custody of the child.' " (*Ibid.*) Further, when making such a custody determination, "the court's focus and primary consideration must always be the best interests of the child." (*Id.* at p. 268.)

Three years later, in *Janee W., supra,* 140 Cal.App.4th 1444, the Second District Court of Appeal addressed the issue of reunification services in the context of a section 361.2 placement. In that case, two minors were placed with their previously noncustodial father at the six-month review hearing. (*Janee W., supra,* at pp. 1448–1449.) At the 12-month review hearing, the juvenile court indicated that it did not believe that reasonable services had been offered to the mother during the previous six months. (*Id.* at p. 1453.) However, since the children were safe in their father's care, the juvenile court awarded full legal and physical custody of the minors to the father and terminated dependency jurisdiction. (*Id.* at pp. 1449–1450.) Citing the then

relevant court rule, the appellate court first noted that a placement with a noncustodial parent pursuant to section 361.2 can occur at subsequent review hearings even though, by its terms, section 361.2 applies only when a court first takes jurisdiction over a minor. (*Janee W., supra*, at p. 1451.)[10] It then broadly concluded that the statutory and rule provisions entitling a parent to reasonable reunification services "are inapplicable when a child is removed from the custody of one parent and placed with another under section 361.2." (*Janee W., supra*, 140 Cal.App.4th at p. 1453.) Specifically, in the context of that particular case, the court held that "even if reunification services are offered to the previously custodial parent, once the dependency court determines that further supervision of the children in the home of the previously noncustodial parent is not required, the failure to provide adequate reunification services to the other parent does not prevent the court from terminating jurisdiction under section 361.2." (*Janee W., supra,* 140 Cal.App.4th at p. 1455.)

Finally, in *In re A.C.* (2008) 169 Cal.App.4th 636 [88 Cal.Rptr.3d 1] (*A.C.*), the Fourth District Court of Appeal discussed the interplay between section 361.5 and section 361.2 when parents receive some services under each provision. In *A.C.*, the two minors were removed from their mother's home and, prior to disposition, placed with their previously noncustodial father. At the May 2006 dispositional hearing, family maintenance services were ordered for the father. (*A.C., supra*, 169 Cal.App.4th at pp. 639–640.) The mother was offered " 'enhancement' services," defined as nonreunification child welfare services designed to " 'enhance the child's relationship with that parent by requiring that parent to address the issues that brought the child before the court.' " (*Id.* at pp. 640, 641–642 & fn. 5.) Thereafter, the minors were removed from their father's custody in September 2007 pursuant to a section 387 supplemental petition and placed with a relative. (*A.C., supra*, at p. 640.) At the November 2007 dispositional hearing on the supplemental petition, reunification services were ordered for both parents pursuant to section 361.5. After these reunification services were continued at the June 2008 six-month review, the minors appealed, arguing that both parents had already received more than the 18 months of child welfare services statutorily authorized by section 361.5 and that the continuation of such reunification services was therefore improper. (*A.C., supra*, at pp. 639–640.)

---

[10] Currently, rule 5.708(k) provides that "[i]f at any review hearing the court places the child with a noncustodial parent, or if the court has previously made such a placement, the court may, after stating on the record or in writing the factual basis for the order: [¶] (1) Continue supervision and reunification services; [¶] (2) Order custody to the noncustodial parent, continue supervision, and order family maintenance services; or [¶] (3) Order custody to the noncustodial parent, terminate jurisdiction, and direct that *Custody Order—Juvenile—Final Judgment* (form JV-200) be prepared and filed under rule 5.700." This general procedure is applicable at each of the 6, 12- and 18-month reviews. (See rules 5.710(b)(2) [six-month review], 5.715(b)(3) [12-month review] & 5.720(b)(2) [18-month review].)

The *A.C.* court disagreed with the minors, holding that the continuation of reunification services at the six-month review was appropriate. (*A.C., supra*, 169 Cal.App.4th at p. 639.) Specifically, the court concluded that the "[s]ection 361.5 time limits for reunification services start to run when a child is removed from all parental custody at the disposition hearing." (*Ibid.*) In contrast, "[t]he clock does not start running when the child is placed with a noncustodial parent pursuant to section 361.2." (*Ibid.*)[11] Thus, in *A.C.*, the parents were entitled to a full complement of reunification services based on the minors' November 2007 removal from the custody of both parents, despite the previous provision of section 361.2 services. (*A.C., supra*, at p. 649; see *In re T.W.* (2013) 214 Cal.App.4th 1154, 1167–1169 [154 Cal.Rptr.3d 669] (*T.W.*).)

Applying these precedents to the circumstances of this case, we conclude that the child welfare services provided herein pursuant to subdivision (b)(3) of section 361.2 were wholly discretionary and analytically distinct from the mandatory reunification efforts required by section 361.5. (See *A.C., supra*, 169 Cal.App.4th at pp. 648–649; *Erika W., supra*, 28 Cal.App.4th at p. 475; cf. *Joel T., supra*, 70 Cal.App.4th at pp. 267–268.) As the *Joel T.* court noted: "The distinction between the services provided when the minors remain in parental custody and when the minors have been removed from parental custody is a subtle but important one. Services designed merely to support a family's functioning may or may not be the same as those designed to reunify a family even if the ultimate goal in each case is to ameliorate the problems which led to the dependency at the outset." (*Joel T., supra*, at p. 268.) Additionally, a parent's level of engagement in section 361.2 services may differ when the expectation of a timeline for that parent to complete those services, "facing ultimate termination of parental rights under an advisement," is not in place. (*A.C., supra*, at pp. 648–649.) Moreover, "[c]hildren who are placed with at least one of their parents from the beginning of the dependency are differently situated than those who immediately enter foster

[11] In this way, services provided pursuant to section 361.2 were viewed as similar to family maintenance services provided under section 362, subdivision (c), when a dependent minor is maintained in the family home. There are no statutory time limits on the provision of family maintenance services. (*Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 312 [55 Cal.Rptr.3d 647].) Rather, at review hearings held at six-month intervals, the juvenile court may continue such services if it determines that "conditions still exist which would justify initial assumption of jurisdiction under Section 300, or that those conditions are likely to exist if supervision is withdrawn." (§ 364, subd. (c); see *Janee W., supra*, 140 Cal.App.4th at p. 1450.) Thus, at issue is whether "continued supervision is necessary." (§ 364, subd. (c).) In *In re Joel T.* (1999) 70 Cal.App.4th 263 [82 Cal.Rptr.2d 538] (*Joel T.*), the Third District Court of Appeal concluded that, when a minor is removed from parents who have been receiving family maintenance services, those family maintenance services cannot be counted as section 361.5 reunification services. Instead, the court must still provide such parents with the full measure of statutorily mandated reunification services pursuant to section 361.5, based on the minor's subsequent removal from parental custody. (*Joel T., supra*, at pp. 267–268.)

care. Such a child, in most cases, is not suffering from the same level of disruption and need for prompt permanency adjudication as he or she might otherwise experience in a foster care placement." (*A.C., supra*, at p. 652; see *Erika W., supra*, at p. 478 [when a child is placed with a noncustodial parent, the goal of returning a dependent minor to parental custody has already been met and therefore "reunification services are not necessary"].)

■ We further agree with the *Nicholas H.* court that—while review hearings are to be held pursuant to section 366 when a child is placed with a previously noncustodial parent pursuant to subdivision (b)(3) of section 361.2—this does not mean that all of the procedures prescribed by section 366 et seq. "must be rigidly applied and followed verbatim when the status review is of a child who has not been placed in foster care." (*Nicholas H., supra*, 112 Cal.App.4th at p. 265.) Rather, the understanding that "[a] parent placement poses very different considerations for the juvenile court than does a foster care placement . . . ," will guide our interpretation of section 366 et seq. as it applies to the section 361.2 placement at issue in this case and the necessity for a reasonable services finding. (Cf. *Nicholas H., supra*, at pp. 265–267.)

■ In addition, when determining whether a reasonable services finding should be "rigidly applied" to the facts of this case, we also find crucial the *A.C.* court's analysis of the differences between the reunification services offered pursuant to section 361.5, the services provided in connection with a noncustodial parent placement under section 361.2, and the family maintenance services authorized by section 362. Specifically, we endorse the *A.C.* court's statement that "a section 361.2 placement with a noncustodial parent should be treated in the same manner as a section 362 placement with a custodial parent. In either case, the time limits for services set forth in section 361.5 do not apply if dependents are not removed from the custody of both parents at the dispositional hearing." (*A.C., supra*, 169 Cal.App.4th at p. 649.) Indeed, "[d]espite the existence of an actual (if brief) removal from the parent's 'custody' (or 'physical custody') between the initial detention and the dispositional hearing, section 361.5 is inapplicable in the absence of a disposition ordering a placement with someone other than a parent." (*A.C., supra*, at p. 650; see *T.W., supra*, 214 Cal.App.4th at pp. 1167–1169.)[12]

---

[12] We recognize that in *In re N.M.* (2003) 108 Cal.App.4th 845 [134 Cal.Rptr.2d 187] (*N.M.*), the Fourth District Court of Appeal held that the timelines for reunification services under 361.5 begin for both parents if the child is detained from their custody at the *onset of the dependency action*, regardless of whether the court grants one parent custody at the dispositional hearing under a family maintenance plan. (*N.M., supra*, at pp. 853–855.) *N.M.* is arguably factually distinguishable (being in essence a family maintenance case) and interpreted an earlier version of section 361.5. (*T.W., supra*, 214 Cal.App.4th at pp. 1167–1168; see *A.C., supra*, 169 Cal.App.4th at pp. 647–648.) More importantly, however, we believe that its analysis ignores the crucial distinction between temporary detention and removal from parental custody after all necessary findings are made. Thus, to the extent our decision conflicts with

■ Here, Jaden was placed with his previously noncustodial father at the September 2012 dispositional hearing. As a consequence, the section 361.5 reunification "clock" did not begin to run against either parent and the potential termination of their parental rights was not an issue for them. (*T.W.*, *supra*, 214 Cal.App.4th at pp. 1169–1170.) Rather, if Jaden was subsequently removed from the custody of his father through the filing of a section 387 supplemental petition, both parents would still be entitled to a full complement of section 361.5 reunification services before facing the possibility that their parental rights could be terminated and Jaden permanently removed from their care. (See *T.W.*, *supra*, at pp. 1169–1170.) Under such circumstances, we believe that the juvenile court was not required to make a reasonable services finding pursuant to subdivision (e) of section 366.21 before terminating the discretionary reunification services mother was receiving under subdivision (b)(3) of section 361.2. To be sure, the quality of the reunification services provided to a formerly custodial parent and that parent's level of participation in those services are valid and relevant considerations when the juvenile court is reviewing a section 361.2 placement. However, the court's focus should not be on the reasonableness of those services per se, but rather on which parent, if either, should receive custody of the child and whether further court supervision is warranted. (Cf. *Nicholas H.*, *supra*, 112 Cal.App.4th at p. 268; see *T.W.*, *supra*, at p. 1168 [court's "goal" when reviewing a placement under section 361.2 is "to provide a stable, permanent parental home" for a dependent minor "through services under section 361.2, with the possibility of eventually giving permanent custody of [the minor] to one or the other parent"].)[13]

■ In sum, where, as here, a dependent minor is not removed from the custody of both parents at the dispositional hearing and services are provided

---

the rationale of *N.M.*, we—like the courts in *A.C.* and *T.W.*—disagree with *N.M.* (See *A.C.*, *supra*, at pp. 649–650; see also *T.W.*, *supra*, at pp. 1167–1169.)

[13] We note that, when a dependent minor is not placed with a parent at disposition and mandatory reunification services are offered pursuant to section 361.5, that statute expressly provides that "[p]hysical custody of the child by the parents . . . during the applicable time period [for the provision of section 361.5 services] shall not serve to interrupt the running of the time period." (§ 361.5, subd. (a)(3).) Thus—even if the child is subsequently returned to a parent and section 361.2 is invoked because that parent was previously noncustodial—the applicable timelines for reunification services are still running and the parents continue to be faced with the possibility that, if reunification efforts are ultimately unsuccessful, their parental rights could be terminated. While we need not reach this issue, it is arguable that, under such circumstances, a reasonable services finding might be required if juvenile court supervision is continued. (Cf. *In re Calvin P.* (2009) 178 Cal.App.4th 958 [100 Cal.Rptr.3d 654] [where mother and father were granted reunification services pursuant to § 361.5 reasonable services must be found to have been provided to mother despite fact that minors were subsequently returned to father's care under family maintenance plan].)

pursuant to subdivision (b)(3) of section 361.2, we conclude that no reasonable services finding need be made at the periodic review hearings monitoring that placement.[14]

## B. *No Abuse of Discretion*

Having determined that no reasonable services finding was required at the May 2013 review hearing in this matter, we next consider whether the juvenile court's order terminating mother's section 361.2 services was otherwise supportable. As stated above, under subdivision (b)(3) of section 361.2, "[t]he decision whether to provide services and to which parent is discretionary to the court because the child is not out of the home, but in placement with a parent." (*In re Gabriel L.* (2009) 172 Cal.App.4th 644, 651 [91 Cal.Rptr.3d 193]; see *Erika W., supra*, 28 Cal.App.4th at p. 475.) We will therefore uphold the juvenile court's decision to terminate mother's reunification services in this case unless that decision amounted to an abuse of discretion. As has been oft repeated, when we review a juvenile court order for abuse of discretion, the " 'appropriate test . . . is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' [Citation.]" (*Walker v. Superior Court* (1991) 53 Cal.3d 257, 272 [279 Cal.Rptr. 576, 807 P.2d 418]; see *In re Stephanie M.* (1994) 7 Cal.4th 295, 318–319 [27 Cal.Rptr.2d 595, 867 P.2d 706] (*Stephanie M.*), quoting *Walker*.) Accordingly, we will not reverse the juvenile court's decision unless that court " 'has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination . . . .' [Citation.]" (*In re Geoffrey G.* (1979) 98 Cal.App.3d 412, 421–422 [159 Cal.Rptr. 460] (*Geoffrey G.*); see *Stephanie M., supra*, at p. 318, quoting *Geoffrey G.*)

■ Whether the juvenile court abused its discretion in this instance is further informed by the statutory context within which its decision to terminate mother's section 361.2 services was made. When a minor is placed with a previously noncustodial parent pursuant to subdivision (b)(3) of section 361.2, the juvenile court is required to determine, "at review hearings held pursuant to Section 366, which parent, if either, shall have custody of the

---

[14] We agree with mother that *Janee W.* does not necessarily mandate this result. However, we believe the holding in *Janee W.* is consistent with our determination. As discussed above, *Janee W.* holds that the failure to provide adequate reunification services to a previously custodial parent does not prevent the court from terminating jurisdiction under section 361.2 once the juvenile court determines that supervision of the placement with a previously noncustodial parent is no longer required. (*Janee W., supra*, 140 Cal.App.4th at p. 1455.) In that situation, as in the present circumstances, failure to comply with arguably inadequate reunification services could not later be used as the basis for termination of parental rights because custody has been returned to a parent and dependency dismissed.

child." When making such a determination, as in any dependency case, "the court's focus and primary consideration must always be the best interests of the child." (*Nicholas H., supra*, 112 Cal.App.4th at p. 268; see § 202, subd. (d); see *In re B.T.* (2011) 193 Cal.App.4th 685, 692 [122 Cal.Rptr.3d 651] ["[t]he paramount concern of any dependency proceeding is the child's best interests"].) Further, section 361.2 "expressly contemplates that reunification services will be offered only for the purpose of facilitating permanent parental custody of the child by one or the other parent." (*Erika W., supra*, 28 Cal.App.4th at p. 476.) Thus, if "the previously custodial parent has the potential to provide a safe stable permanent home for the child, reunification services can be offered to the previously custodial parent in the hope that this parent will remedy his or her deficiencies and reunify with the child." (*Id.* at p. 477.) On the other hand, the court may order that services be provided solely to the previously *noncustodial* parent "in order to allow that parent to retain later custody without court supervision." (§ 361.2, subd. (b)(3).) Finally, if a dependent has been placed with a formerly noncustodial parent, the court shall determine at each six-month review "whether supervision is still necessary." (§ 366.21, subd. (e); see rules 5.708(k), 5.710(b)(2), 5.715(b)(3) & 5.720(b)(2).)

When the juvenile court's decision to terminate mother's section 361.2 services is viewed within this framework, it is abundantly clear that no abuse of discretion has occurred. At the outset of this opinion, we recounted in detail the facts underlying this matter, and we will not rehash them here. Suffice it to say that the evidence overwhelmingly supports the conclusion that, at the time of the six-month review in May 2013, mother did not have the potential to provide a safe, stable, or permanent home for Jaden. Moreover, it was also evident that it was in Jaden's best interests to focus on father as the parent most likely to retain later custody without juvenile court supervision. (See § 361.2, subd. (b)(3).) Jaden was thriving in his father's care. In contrast, mother had made no progress in solving the problems that led to Jaden's initial removal; continued to obstinately and belligerently maintain that she did not require any services to reunify with the minor; and remained completely oblivious to the significantly detrimental impact that her actions were having on her son. Further, given mother's erratic behaviors, her inability to work with father in Jaden's best interests, and her propensity to ignore court orders, it was reasonable for the court to conclude that continued supervision of the situation by the juvenile court was appropriate. In sum, we find the juvenile court's order in this case to be entirely proper.[15]

---

[15] While there was clearly some confusion in the juvenile court as to the necessary findings to be made at the May 2013 hearing, reversal is not required where, as here, the correct findings were amply supported by the evidence. (*In re A.J.* (2013) 214 Cal.App.4th 525, 538 [153 Cal.Rptr.3d 851]; *Janee W., supra*, 140 Cal.App.4th at p. 1450; see *People v. Geier* (2007)

## III.   DISPOSITION

The judgment is affirmed.

Ruvolo, P. J., and Rivera, J., concurred.

41 Cal.4th 555, 582 [61 Cal.Rptr.3d 580, 161 P.3d 104] [appellate court reviews the correctness of the court's ruling, not its reasoning, "and, if the ruling was correct on any ground, we affirm"].)