Filed 11/30/20  In re Z.R. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Z.R., a Person Coming Under the Juvenile Court Law. | B305504 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 19CCJP020307A) |
| Plaintiff and Respondent, | |
| v. | |
| ANITA H., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Kim L. Nguyen, Judge.  Affirmed.

Amy Z. Tobin, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kim Nemoy, Assistant County Counsel, and Brian Mahler, Deputy County Counsel, for Plaintiff and Respondent.

_____

Anita H. (mother) appeals from the order of the juvenile court terminating its jurisdiction over her son Z.R. pursuant to Welfare and Institutions Code[1] section 364. She contends that the court proceeded under the incorrect statute at the six-month review hearing and that in any event the evidence does not support the findings. We affirm.

## BACKGROUND

Z.H. was age 10 and living with his mother at the time they came to the attention of the Department of Children and Family Services (DCFS) because of unsafe and unsanitary living conditions. The two lived in a trash-filled hotel room and shared a bed. During its investigation, DCFS discovered that the child was malnourished. He was extremely underweight and had very little body mass. Z.H. was not receiving medical care at the time, but once doctors examined him, they suspected that malnutrition had affected the child's growth. Z.H. was isolated because, although he claimed he was home schooled, he was actually spending most of his day "looking at memes online." Further, mother tried to interfere with the child's contact with father. Mother appeared to be trying to fulfill her unmet emotional needs through the child by confiding in, and seeking validation from, him. Z.H. wore a diaper, displayed severe anxiety and withdrawal, and feared father. DCFS filed a section 300 petition.

_____

[1] All further statutory references are to the Welfare and Institutions Code.

2

The juvenile court detained Z.H. from mother and released him to father.

On July 19, 2019, mother pleaded no contest to two counts in the first amended petition alleging Z.H.'s malnutrition, medical neglect (§ 300, subd. (b)(1)), mother's interference with the child's relationship with father, and her emotional manipulation of Z.H., causing the child to suffer serious emotional damage (§ 300, subd. (c)). Father was nonoffending because the court dismissed the petition's counts naming him. The court removed the child from mother's custody (§ 361, subd. (c)), and ordered him placed with father. The court ordered enhancement services for mother, involving parenting classes and conjoint and individual counseling, and family maintenance services for father.

At the close of the contested six-month review hearing held in March 2020, the juvenile court found "that those conditions which would justify the initial assumption of jurisdiction under . . . Section 300 no longer exist and are not likely to exist if supervision is withdrawn and the Court terminates jurisdiction with a juvenile custody order awarding joint legal custody of minor to parents and sole physical custody of minor to father." Mother received monitored visitation for two hours twice weekly and monitored telephone calls twice weekly. The court stayed termination pending receipt of the custody order. The ensuing exit order filed with the termination order on March 20, 2020 specified that mother's "monitor shall be mutually agreed upon, monitor selected by the father or the mother to incur the cost of paid professional monitor." Mother appealed.

## DISCUSSION

I.     The statutory framework

Mother first contends that the juvenile court erred by proceeding under section 364 rather than under section 366.21.

A.     *The custody and disposition orders*

When the juvenile court removes a dependent child from the custody of the parent with whom the child is living, the court determines "whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child. If that parent requests custody, the court shall place the child with the parent" unless it finds that such a placement would be detrimental to the child. (§ 361.2, subd. (a).)

If the court places the child with the noncustodial parent, it "may terminate its jurisdiction over the child (§ 361.2, subd. (b)(1)), maintain jurisdiction pending a home visit (§ 361.2, subd. (b)(2)), or maintain jurisdiction with court supervision (§ 361.2, subd. (b)(3)). 'In enacting subdivisions (a) and (b) of section 361.2, the Legislature envisioned a two-step process: under subdivision (a), the court examines whether it would be detrimental to temporarily place a child with the nonoffending noncustodial parent; under subdivision (b), the court decides whether that placement should become permanent and whether the court's jurisdiction should be terminated.' " (*In re Liam L.* (2015) 240 Cal.App.4th 1068, 1081.)

If the juvenile court places a dependent child with the previously noncustodial parent and opts to maintain jurisdiction with court supervision under section 361.2, subdivision (b)(3), it

4

has three choices regarding services. First, it "may order that reunification services be provided to the parent or guardian from whom the child is being removed." (§ 361.2, subd. (b)(3).) Second, *the court may order that services be provided solely to the parent who is assuming physical custody in order to allow that parent to retain later custody without court supervision.* (§ 361.2, subd. (b)(3), italics added.) Third, the court may order "that services be provided to both parents, in which case the court shall determine, at review hearings held pursuant to Section 366, which parent, if either, shall have custody of the child." (§ 361.2, subd. (b)(3).) "The decision whether to provide services and to which parent is discretionary to the court because the child is not out of the home, but in placement with a parent." (*In re Gabriel L.* (2009) 172 Cal.App.4th 644, 651.)

Mother's brief is centered on her belief that, because the court awarded her enhancement services, it was proceeding under the third service-related choice, namely that if services are provided to both parents, the court must assess at the section 366 hearing which parent will have custody. (§ 361.2, subd. (b)(3).) For example, mother argues that a "parent's level of participation in services are valid and relevant considerations when the juvenile court is reviewing a section 361.2 placement to consider which parent should have custody and whether further court supervision is warranted." However, we conclude that the court opted for the second service-related choice.

The reason is that the juvenile court removed Z.H. from the custody of mother, with whom he had been living, and placed him with father under its supervision and so the child was not placed out of the home. As the disposition plan shows, the court ordered

5

enhancement services for mother.[2]  However, unlike reunification services, which are designed to " 'facilitate the return of a dependent child to parental custody' " (*In re Jaden E.* (2014) 229 Cal.App.4th 1277, 1281) or maintenance services, whose purpose is to "maintain the child in his or her own home" (§ 16506), enhancement services are "*not designed to reunify the child with the parent*, but instead to enhance the child's relationship with that parent by requiring the parent to address the issues that brought the child before the court" (1 Seiser & Kumli, Cal. Juvenile Courts Practice and Procedure (2020) § 2.129, italics added; see *Earl L. v. Superior Court* (2011) 199 Cal.App.4th 1490, 1497, fn. 1; *In re A.C.* (2008) 169 Cal.App.4th 636, 642, fn. 5). Mother did not challenge any part of the disposition order and so it is final.

It follows from the disposition order that awarded services designed to enable father only to maintain custody while arranging for mother simply to enhance her relationship with Z.H. (see § 361.2, subds. (a) & (b)(3)), that the court proceeded under the second service-related choice and assessed whether father could retain later custody without court supervision (see § 361.2, subd. (b)(3)).  The court never intended to consider whether to give mother custody pursuant to the third service-

---

**2** Although the disposition minute order directed DCFS to "Provide Family Maintenance Services to the minor and parents," the order also stated that the "disposition case plan is . . . incorporated herein."  On the incorporated case plan, the juvenile court specifically inked in the word, enhancement before court ordered case plan, demonstrating that with specific reference to mother, the court intended that the services she receive be for enhancement and not reunification or maintenance.

related choice or it would have awarded mother reunification services.

B.     *The six-month review and order terminating jurisdiction*

" 'If a child has been declared a dependent of the juvenile court and placed under court supervision, the status of the child must be reviewed every six months.' [Citation.]  The applicable standards at the six-month review hearing differ depending on the child's placement." (*In re Maya L.* (2014) 232 Cal.App.4th 81, 98.)  Generally, however, the custodial parent has the opportunity to regain physical custody of the child at each review hearing.  (*In re Liam L.*, *supra*, 240 Cal.App.4th at p. 1081.)

Section 366.21, subdivision (e)(6) governs instances where the child has been "placed under court supervision with a previously noncustodial parent pursuant to Section 361.2."  In contrast, section 364, subdivision (a) applies when "the child is *not* removed from the physical custody of his or her parent or guardian." (Italics added.)  As the juvenile court placed Z.H. with the previously noncustodial parent under section 361.2, subdivision (a), and neither returned the child to mother's custody nor awarded the parents shared custody, the governing statute at the six-month review hearing was section 366.21, subdivision (e)(6) and not section 364.  Therefore, mother is correct that the court committed legal error in proceeding under section 364.

Nonetheless, we conclude that the error was harmless.  The reason is that the standards applicable to a six-month review hearing for a child placed with a noncustodial parent under section 366.21, subdivision (e)(6) "are similar to the standards applicable to a section 364 six-month review hearing for a child

7

who was not removed from a custodial parent." (*In re Maya L.*, *supra*, 232 Cal.App.4th at p. 99.)

Section 366.21, subdivision (e)(6) provides that "*the court shall determine whether supervision is still necessary*.  The court may terminate supervision and transfer permanent custody to [the previously noncustodial] parent, as provided for by paragraph (1) of subdivision (b) of Section 361.2."  (Italics added.) Section 361.2, subdivision (b)(1) authorizes the court to order that "the parent become legal and physical custodian of the child.  The court may also provide reasonable visitation by the noncustodial parent.  The court shall then terminate its jurisdiction over the child."

Likewise, the test under section 364, subdivision (c), is to "*determine whether continued supervision is necessary*.  The court shall terminate its jurisdiction unless the social worker . . . establishes by a preponderance of evidence that the conditions still exist which would justify initial assumption of jurisdiction under Section 300, or that those conditions are likely to exist if supervision is withdrawn."  (Italics added.)

Accordingly, both sections 366.21, subdivision (e)(6) and 364, subdivision (c) require the juvenile court to determine whether supervision remains necessary.  The only difference is that for a child placed with a noncustodial parent under section 361.2, subdivision (a), such as here, the court need not also "consider whether ' "the conditions still exist which would justify initial assumption of jurisdiction under Section 300" ' " (*In re Maya L., supra,* 232 Cal.App.4th at p. 99) as would be required under section 364.

The juvenile court here made the expanded finding under section 364, subdivision (c), both that the conditions causing the

initial assumption of jurisdiction no longer existed and that those conditions were not likely to exist if supervision were withdrawn. Regardless of whether the court made the findings under section 364 or section 366.21, subdivision (e), the result is the same: the court found that its supervision over Z.H. was not still necessary. (See *In re Maya L.*, *supra*, 232 Cal.App.4th at p. 101; *In re Janee W.* (2006) 140 Cal.App.4th 1444, 1452 [we may affirm if substantial evidence supports finding even if juvenile court used language of § 364 not § 366.21].) Therefore, the error was harmless.

II.     Substantial evidence supports the finding.

Mother next contends that the evidence does not support the finding that continued supervision was unnecessary.

Although we generally review orders terminating juvenile court jurisdiction under an abuse of discretion standard, we review the court's factual findings for substantial evidence. (*In re A.J.* (2013) 214 Cal.App.4th 525, 535, fn. 7; *In re Janee W., supra,* 140 Cal.App.4th at p. 1452.) "Substantial evidence is evidence that is reasonable, credible, and of solid value." (*Los Angeles County Dept. of Children & Family Services v. Superior Court* (2012) 211 Cal.App.4th 13, 20.) When assessing whether continued juvenile court supervision is necessary, courts focus on the dependent children and determine whether in the custody of the nonoffending parent they are still at risk of harm and remain in need of the protection of the juvenile court. For example, in *In re Janee W.*, at page 1452, the appellate court cited the agency's reports that unambiguously praised how well the children were doing, and how safe, clean, and happy they were. The appellate court in *In re Sarah M.* (1991) 233 Cal.App.3d 1486 at pages 1499 to 1500, observed that the child was no longer at risk at the final

hearing and no longer needed the court's protection. (See *In re A.J.*, at p. 535 [evidence supported termination order because there was no " 'protective issue' "].)

Z.H. was a dependent of the juvenile court because with mother, he was malnourished, medically neglected, emotionally manipulated, and suffered severe anxiety, withdrawal, and fear of father. By the time of the final hearing, DCFS reported that Z.H. had adjusted "very well" to father's custody where he was both physically and emotionally thriving. Z.H. had developed a "special bond" and a close relationship with father and stepmother, who he sought out for comfort, assistance, and validation. He had gained weight and was sleeping through the night. The child was enrolled in school where he was "content" and doing very well academically and socially. He helped father with the family business and was looking forward to the family vacation and to starting summer camp. He was comfortable with social interaction. Z.H.'s personal hygiene had improved, he was no longer wearing a diaper, he had received physical and dental exams and was doing very well in therapy. DCFS recommended to the juvenile court that it terminate jurisdiction as Z.H. did "not display any emotional, behavior or developmental concerns that were present at the beginning of the case." This evidence more than amply supports the finding that continued court supervision of Z.H. was not still necessary.

Mother argues for continued supervision reasoning that the juvenile court had not received the results of her psychological evaluation or allowed a reasonable period for conjoint therapy with Z.H., and she was close to completing counseling and a parenting class. She notes that DCFS reported that she continued to struggle with the issues that brought the family into

the juvenile court.  But, as noted, under sections 361.2, subdivision (b)(3) and 366.21, subdivision (e)(6), the court assesses whether the child requires continuing court supervision in the custody of the nonoffending parent.

Effectively mother is contending that the juvenile court should have continued its jurisdiction because mother could not pay for conjoint therapy or a monitor.  She argues that without the juvenile court's "ongoing supervision, conjoint counseling was virtually an impossibility.  [Mother] testified she would not be able to afford it."  However, the court in *In re Sarah M.*, *supra*, 233 Cal.App.3d at pages 1499 to 1500 rejected the noncustodial parent's contention that continued supervision was necessary because visitation problems caused the child emotional distress and there were concerns about who would pay for conjoint therapy.  The *Sarah M.* court reasoned that such arguments were "not a cry for continued supervision, but rather a plea for financial aid."  (*Id.* at p. 1500.)

Finally, mother argues that withdrawing supervision will render visitation meaningless because of difficulties in agreeing on a monitor.  Exit orders are not the same thing as permanent family law custody and visitation orders.  "Juvenile court exit orders . . . are in the nature of pendente lite orders in family law."  (*In re John W.* (1996) 41 Cal.App.4th 961, 973, fn. omitted.)  Such exit orders are modifiable.  Section 362.4, subdivision (b) provides that any "order issued pursuant to this section shall continue until modified or terminated by a subsequent order of the superior court."  Mother may always seek modification of the exit order in the family court.  However, a problem between the parents about scheduling visitation is not a reason to retain

11

juvenile court jurisdiction under section 366.21, subdivision (e)(6).

## DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED.


DHANIDINA, J.


We concur:


EDMON, P. J.


LAVIN, J.