Filed 6/17/21  In re N.K. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re N.K., a Person Coming Under the Juvenile Court Law. | |
| STANISLAUS COUNTY COMMUNITY SERVICES AGENCY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> S.K., <br><br> Defendant and Appellant. | F082037 <br><br> (Super. Ct. No. JVDP-20-000120) <br><br> **OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Stanislaus County.  Ann Q. Ameral, Judge.

Matthew I. Thue, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Boze, County Counsel, and Maria Elena Ratliff, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

Newborn N.K. was adjudged a dependent of the juvenile court, removed from the home of S.K. (mother), and placed with his previously noncustodial parent, B.M. (father), pursuant to Welfare and Institutions Code section 361.2.[1] The juvenile court ordered father to receive family maintenance services and exercised its discretion not to order any services for mother. Mother appeals the juvenile court's dispositional orders, contending the court erred by not ordering her to be provided with services under section 361.2, subdivision (b)(3). Finding no error, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

In June 2020, the Stanislaus County Community Services Agency (agency) was alerted mother had given birth to N.K. N.K. appeared clean and healthy, aside from having jaundice, and had no marks indicative of abuse, but the agency was concerned because mother had recent child welfare history concerning her two older children. In October 2016, N.K.'s half sibling, Z.J., was removed from mother's care due to his having multiple fractures and significant injuries consistent with physical abuse and because of domestic violence between mother and Z.J.'s father. Mother was granted reunification services, but services were subsequently terminated, and in January 2018, mother's parental rights as to Z.J. were terminated. In October 2018, N.K.'s half sibling, N.S., was removed from mother's care as a newborn because he tested positive for illicit substances at the time of his delivery and because of domestic violence and substance abuse by mother and N.S.'s father. Mother was granted reunification services, which were also subsequently terminated. At the time of N.K.'s birth, a section 366.26 hearing was scheduled for N.S.'s case.

The social worker investigating the referral concerning N.K. met with mother at the hospital after N.K.'s birth and informed mother a safety plan would need to be made,

---

[1] All further undesignated statutory references are to the Welfare and Institutions Code.

pending a Team Decision Meeting (TDM) due to her child welfare history. Mother suggested to the social worker that N.K. could be discharged under the care of the supervisor at the facility where mother lived, "JMJ Maternity." The social worker contacted the JMJ supervisor who agreed to have N.K. discharged under her care until a TDM could be completed.

A few days later, mother was permitted, due to a misunderstanding by JMJ Maternity, to leave the facility with N.K., unsupervised. This raised concerns with the agency because mother was not supposed to be with N.K. unsupervised, and had chosen to take N.K., who had jaundice, into the community during the COVID-19 pandemic. When the social worker raised these concerns with mother, she did not show any concern for N.K.'s health and asserted he was fine. The agency determined a protective custody warrant should be sought before the TDM, and on June 8, 2020, the court issued one and N.K. was placed into protective custody. At the TDM the following day, mother named father as an alleged father of N.K.

The agency's addendum to detention report dated June 16, 2020, indicated that within the previous year, mother had been discharged from residential substance abuse treatment and excused from drug court[2] for noncompliance. In January 2020, mother had submitted an intentionally diluted drug test sample as part of one of the other dependency cases. In February 2020, mother was discharged from another service provider. Mother had begun re-engaging in services by entering an outpatient drug treatment program in March 2020.

On June 16, 2020, the agency filed a first amended section 300 petition on behalf of N.K., alleging he came within the juvenile court's jurisdiction under section 300, subdivisions (b)(1) (failure to protect) and (j) (abuse of siblings). In addition to mother's

---

[2] At the time dependency proceedings were initiated, mother was on felony probation. Mother subsequently violated her probation and was sentenced to home "confinement" starting August 28, 2020.

past child welfare history with N.K.'s two half siblings, a number of allegations were made, including mother's history of substance abuse and being discharged from drug court in November 2019 due to positive tests, as well as her documented history with domestic violence relationships and lengthy criminal history. The petition alleged mother reported she experienced domestic violence with father in November 2019 in the form of yelling and threats. It was further alleged mother took N.K. out in June 2020, when she was not supposed to be with him unsupervised and did not follow up on his diagnosis of jaundice.

At the detention hearing on June 17, 2020, the juvenile court ordered N.K. detained from mother, focusing on the fact she took N.K. out into the community when he was three days old and jaundiced in the midst of the COVID-19 pandemic.

Mother continued to engage in voluntary services. On July 1, 2020, she completed a two-session intake appointment for parenting, individual counseling, and a domestic violence assessment. On August 26, 2020, she completed a five-month outpatient substance abuse treatment program, testing negative for all illicit substances throughout the treatment period. Upon graduation of her treatment program, the facility recommended mother enter a sober living facility, but mother moved to the Salvation Army instead. A representative from mother's outpatient program reported to the social worker that mother had told them she would need permission from the probation department before entering a sober living facility, but when the social worker sought clarification from probation, they told the social worker that mother only needed to tell them when her address changed. The agency reported concerns that mother chose not to live in a sober living facility where the agency could track her treatment plan's progress. As of August 31, 2020, mother had completed nine parenting sessions, one domestic violence class session, and two individual counseling sessions.

The agency's disposition report dated September 15, 2020, recommended that mother be bypassed for family reunification services pursuant to section 361.5,

subdivision (b)(10) and (b)(11) based on her past termination of reunification services and parental rights to her other children.[3]  In support of this recommendation, the social worker reported that as part of N.K.'s half sibling's dependency case, mother was recommended to complete residential treatment but failed to follow through with the treatment.  The report noted that though mother had enrolled in outpatient treatment in March 2020, she had submitted a test positive for opiates in June 2020.  The report further indicated that mother's parental rights as to N.S. had been terminated in June 2020.

At the time the disposition report was prepared, father was not yet elevated to presumed status, but DNA testing revealed it was 99.99 percent likely he was the biological father.  The agency recommended father be elevated to presumed status and be granted reunification services.

The agency prepared an addendum report dated October 8, 2020, changing the dispositional recommendation.  The agency continued to recommend the juvenile court assume jurisdiction and adjudge N.K. a dependent of the court but that N.K. be released to father on family maintenance services.  The social worker opined N.K. would not suffer any detriment if he were released to father.  The agency had conducted a home assessment, and father had plenty of baby supplies.  Father lived with the paternal grandmother, and they both passed background checks.  Father worked full time and had a schedule opposite from the paternal grandmother, so care could always be provided for N.K.  Father also lived next door to the paternal great-grandmother who could also

---

**3** Section 361.5, subdivision (b)(10) and (b)(11) provides that the court may not order reunification services to a parent when it finds by clear and convincing evidence the court terminated reunification services for any sibling or half sibling because the parent failed to reunify with the sibling or half sibling (§ 361.5, subd. (b)(10)) or the parental rights of a parent over any sibling or half sibling of the child had been permanently severed (§ 361.5, subd. (b)(11)) and the parent had not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling from that parent (§ 361.5, subd. (b)(10) & (b)(11)).

provide care to N.K. when needed.  Father admitted to smoking marijuana recreationally on the weekends and reported he would utilize the paternal grandmother as childcare if he chose to smoke and would change his clothes before having contact with N.K.  Father tested negative for substances the day of the home assessment.  Father reported he was not in contact with mother, and he had only known mother for two months before she became pregnant with N.K.  He did not think she was able to care for N.K. and did not want to be involved with her.  He indicated that if she made positive changes in her life, he would be open to her having supervised visitation with N.K.

Father had begun participating in parenting classes and was going to complete a domestic violence assessment; he completed a substance use disorder assessment and did not meet the criteria for substance use disorder and no substance abuse services were recommended.

The agency recommended the court not exercise its discretion to provide "family preservation services" to mother.

Mother requested the matter be set for a contested jurisdiction/disposition hearing, and at a hearing on October 9, 2020, the court granted discretion to the agency to release N.K. to father.

At the contested jurisdiction/disposition hearing held on November 6, 2020, father was elevated to presumed status, and the agency indicated N.K. had already been released to him.  Counsel for the agency made an offer of proof that, if called to testify, the social worker would testify that as of the day of the trial, the social worker had no information as to whether mother had entered a county approved sober living facility.

Mother testified on her behalf.  She testified she had completed her outpatient substance abuse program and parenting classes and was participating in domestic violence victim counseling and individual counseling.  Mother stated she wanted to continue with services as they were helping her become a better person.  Mother was living at the Salvation Army on a "SAP program," which she explained was a program

for "people who are on ankle monitor" and required her to stay drug free, have a job, and comply with her probation conditions. Mother was employed at a packing house.

Counsel for the agency argued mother should not be provided with any services, an argument to which counsel for N.K. and father joined. Counsel for mother argued against the court assuming jurisdiction, and, in the alternative, that she be provided with services.

In ruling, the juvenile court found N.K. was a child described by section 300, subdivisions (b)(1) and (j). The court noted it was concerned mother had not completed her domestic violence services and was reluctant to enter a sober living facility that met the requirements of the agency. As for disposition, the juvenile court adjudged N.K. a dependent of the court and found N.K. was at substantial risk of detriment if he were to be returned to mother, but not if he were placed with father. As for services, the court ordered father be provided with family maintenance services. The court decided to exercise its discretion by not ordering any services be provided to mother because she had received services for the past four years through other dependency proceedings and the court "[did not] see that she's really availed herself of those services." The court went on to state: "I think every child would benefit from all parents receiving some type of service, but it gets to a point where how long do you provide services?" The court ordered mother and N.K. to have monthly supervised visits.

The court set a review hearing, and mother appealed the order denying her services.

### DISCUSSION

Mother's sole contention on appeal is that the court erred by declining to order she be provided with services under section 361.2, subdivision (b)(3). We disagree.

At the disposition hearing, if the court places the child with the previously noncustodial parent and does not terminate jurisdiction over the child, the court has three options: (1) order reunification services to the parent from whom the child is being

7.

removed; (2) "order that services be provided solely to the parent who is assuming physical custody in order to allow that parent to retain later custody without court supervision"; or (3) order "that services be provided to both parents, in which the court shall determine, at [future] review hearings …, which parent, if either, shall have custody of the child." (§ 361.2, subd. (b)(3).)

Section 361.2 "expressly contemplates that reunification services will be offered only for the purpose of facilitating permanent parental custody of the child by one or the other parent." (*In re Erika W.* (1994) 28 Cal.App.4th 470, 476 (*Erika W.*).) The juvenile court may deny services to the parent from whom the child is being removed and order services only to the previously noncustodial parent if that parent "can provide a safe and stable permanent home for the child and the evidence establishes that the other parent cannot." (*Ibid.*) Providing services to the previously noncustodial parent alone "serves the Legislature's goals by placing the child in parental custody *and* providing for a safe and stable permanent home for the child." (*Ibid.*; see *In re A.C.* (2008) 169 Cal.App.4th 636, 644 ["Although [§ 361.2] ha[s] been revised since 1994, *Erika* [*W.*] still persuasively describes the intended purpose … of the … statute[] as [it] exist[s] now."].)

The court " 'has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accordance with this discretion' "; this includes finding that ordering services to the nonreunifying parent is not in the child's best interest and to not order services for that parent. (*In re Gabriel L.* (2009) 172 Cal.App.4th 644, 652; see *In re Jaden E.* (2014) 229 Cal.App.4th 1277, 1285 [services provided pursuant to § 361.2, subd. (b)(3) are "wholly discretionary"].)

We review the juvenile court's decision not to order services to mother for abuse of discretion. (*In re Nada R.* (2001) 89 Cal.App.4th 1166, 1179.) When we review a juvenile court order for abuse of discretion, the " ' "appropriate test … is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for

that of the trial court." ' " (*In re Stephanie M*. (1994) 7 Cal.4th 295, 318–319.)  We will not reverse the juvenile court's decision unless that court " ' "has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination." ' " (*Id*. at p. 318.)

Mother has not shown the juvenile court's decision was arbitrary, capricious, or patently absurd.  The precise question before the court was whether mother could provide a safe and secure permanent home for N.K. so as to justify her receiving services along with father.  (See *Erika W.*, *supra*, 28 Cal.App.4th at p. 477.)  The court was reasonable in resolving this inquiry in the negative and finding that ordering mother to be provided with services was not in N.K.'s best interest.

Because N.K. was placed with father, the court did not reach the question of whether a so-called bypass provision under section 361.5 applied, but we find the factors a court must look at when determining whether reunification services are in the best interest of a child in that context instructive.  Those factors include:  " 'the parent's current efforts, fitness, and history; the seriousness of the problem that led to the dependency; the strength of the parent-child and caretaker-child bonds; and the child's need for stability and continuity.' " (*Jennifer S. v. Superior Court* (2017) 15 Cal.App.5th 1113, 1124–1125.)

We first acknowledge the record demonstrates that mother's "current efforts" were moving in a positive direction in that mother had completed a substance abuse program and was participating in domestic violence and parenting services and appeared to have been sober for a number of months.  These efforts, while commendable, did not compel the juvenile court to order any services under section 361.2 to mother, and we are not persuaded by mother's argument that the juvenile court was required to order services to mother as a "backup" to father.

In addition to the facts favorable to mother, the court could also reasonably consider mother's history of poor performance on past services, her failure to reunify

9.

with N.K.'s half siblings, and her reticence to fully comply with the agency's requests (for example, by choosing not to reside in a sober living facility where the agency could track her progress). Further, though there were no recent reported domestic violence incidents and mother had begun to participate in domestic violence services, the court could consider that mother had not completed a domestic violence program in light of the fact that domestic violence had been an issue in her previous two dependency proceedings, with Z.J. being a direct victim of physical abuse.

As we have stated, section 361.2, subdivision (b)(3) expressly states that when services are provided to both parents under this subdivision, it is for the purpose of determining which parent should be granted custody at a future review hearing. (§ 361.2, subd. (b)(3); *Erika W.*, *supra*, 28 Cal.App.4th at p. 477.) Because mother's participation in services was relatively recent, she had not yet made substantial progress in domestic violence or counseling services, and she had a history of poor performance on services, the court could have reasonably concluded mother would not be able to make enough progress to be granted custody at a future review hearing before dependency jurisdiction was terminated.

Moreover, the court could have reasonably inferred the relationship between mother and N.K. was weak. N.K. was removed from mother as an infant, had only lived with her for a matter of days, and had no demonstrable bond with her on this record. In contrast, N.K. was already living with father at the time of the dispositional hearing with no concerns noted.

Finally, in terms of N.K.'s stability and continuity, N.K. was placed with a parent who the court determined could provide a safe and stable permanent home. The goal of dependency proceedings, i.e., placement with a parent (*Erika W.*, *supra*, 28 Cal.App.4th at p. 478), had already been met. Notably, mother does not challenge the court's orders assuming jurisdiction over N.K., removing N.K. from her custody (and accordingly the

court's finding of detriment should N.K. be placed with her), nor placing N.K. with father.

Based on the totality of the evidence, the court could have reasonably concluded mother was unable to provide a safe and stable permanent home for N.K. and that her not receiving services was in N.K.'s best interest. We find no abuse of discretion.

## **DISPOSITION**

The juvenile court's November 6, 2020 order declining to offer mother services is affirmed.

DE SANTOS, J.

WE CONCUR:

FRANSON, Acting P.J.

PEÑA, J.

11.