Filed 4/11/22  In re Ebony B. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re EBONY B. et al., Persons Coming Under the Juvenile Court Law. | B313484 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ROSA H.,<br><br>Defendant and Appellant. | (Los Angeles County Super. Ct. No. 19CCJP00284AB) |

APPEAL from an order of the Superior Court of Los Angeles County, Annabelle G. Cortez, Judge.  Affirmed.

Janette Freeman Cochran, under appointment by the Court of Appeal, for Defendant and Appellant.

Tarkian & Associates and Arezoo Pichvai for Plaintiff and Respondent.

## INTRODUCTION

Eighteen months after declaring Ebony B. and Nila B. dependent children of the juvenile court, the court terminated family reunification services for their mother, Rosa H. Prior to the selection and implementation hearing under Welfare and Institutions Code section 366.26,[1] Rosa filed a petition under section 388 for an order returning Ebony and Nila to her care or, in the alternative, reinstating family reunification services. Rosa appeals from the order denying her petition. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.     *The Court Declares Ebony and Nila Dependent Children of the Court and Removes Them from Rosa*

On January 7, 2019 the Department received a referral alleging Rosa had hit Ebony's and Nila's father, Dylan B. At the time, Ebony was two years old and Nila was 10 months old. A social worker interviewed Dylan, who stated Rosa threw a hard object that hit him in the back of the head. Dylan said Rosa then began to punch him.

The next day the Department received a referral stating that someone found Ebony and Nila crying and unattended in a stroller at a bus stop near a busy intersection. Eventually, Dylan

---

[1]     Statutory references are to the Welfare and Institutions Code.

2

arrived and said he was the children's father. Law enforcement took Ebony and Nila to a Los Angeles Police Department station.

Rosa arrived at the station and spoke to two social workers. She admitted that she "sock[ed]" Dylan in the face the previous weekend and stated that she wanted to "hurt him real bad" and "kill him." She also said the family was homeless. After obtaining a removal order, the Department removed Ebony and Nila from Rosa and Dylan and placed them in protective custody.

In March 2019 the juvenile court sustained a petition under section 300, subdivision (b), and declared Ebony and Nila dependent children of the court. The court found true allegations that there was a substantial risk Ebony and Nila would suffer serious physical harm because Rosa and Dylan (who is not a party to this appeal) had a history of physical altercations, including the recent January 2019 incident and a November 2018 incident where Rosa kicked Dylan, and because Rosa "demonstrated numerous mental and emotional problems" and required hospitalization to treat her mental health. The court ordered family reunification services for Rosa, including participation in anger management and parenting programs and individual counseling. The court ordered monitored visits for Rosa, but precluded her from visiting the children at the same time Dylan was visiting them.

B. *The Court Terminates Family Reunification Services*

In September 2019 the court held a review hearing under section 366.21, subdivision (e). Prior to the hearing, the Department reported Rosa had participated in some, but not all, of the court-ordered programs and counseling. Rosa consistently attended her monitored visits with the children. However, she

twice verbally accosted a social worker at a Department office and left two voice messages for the social worker calling her profane names and threatening her.  At the review hearing, the court found Rosa had not made substantial progress toward alleviating or mitigating the causes necessitating juvenile court jurisdiction.

In September 2020 the court held the permanency planning hearing under section 366.21, subdivision (f).  Prior to the hearing, the Department reported Rosa had made some additional progress toward completing the court-ordered programs.  Rosa testified at the hearing that she did not complete the parenting course, but that she had only a "couple" more anger management classes remaining.  But the Department also reported that Rosa behaved inappropriately and failed to take care of Ebony and Nila during her monitored visits and that Rosa also appeared to still be seeing Dylan, who accompanied Rosa on most of her monitored video calls with the children.  The juvenile court again found Rosa had not made substantial progress toward alleviating the causes necessitating juvenile court jurisdiction and terminated reunification services for Rosa.

C.    *Rosa Files a Petition Under Section 388*

In December 2020 Rosa filed a petition under section 388, requesting an order returning Ebony and Nila to her care or, in the alternative, reinstating reunification services.  Rosa alleged that she participated in individual therapy sessions between March 2019 and November 2020; that she completed the court-ordered anger management, parenting and outpatient treatment programs; and that she participated in a domestic violence program.

4

Prior to the hearing on the petition, the Department reported that the supervisor of the anger management and domestic violence programs stated that, although Rosa completed the programs, she behaved inappropriately during the courses.[2] The Department reported that Ms. W., Ebony and Nila's caretaker, said that Rosa, during visits with Ebony and Nila, acted childlike and failed to provide appropriate parental care. After the visits, both Ebony and Nila acted out. Ms. W. also stated that in April 2021 she saw Rosa yelling at, and repeatedly hitting, Dylan in a parking lot.

D. *The Court Denies the Petition*

In July 2021 the court denied Rosa's petition. The court found Rosa had not shown a change in circumstances because, even though Rosa had completed several programs and services and had participated in counseling, her participation had "not quite fully led to gaining the insight and putting into practice the skills that she is alleging she has learned." The court cited in particular the recent incident where Rosa hit Dylan in a parking lot. The court also found that neither placing Ebony and Nila with Rosa nor reinstating Rosa's reunification services was in the children's best interests. Rosa timely appealed from the order denying her petition under section 388.

---

[2] Rosa had not completed the domestic violence program when she filed the petition, but completed the program prior to the hearing.

5

# DISCUSSION

A. *Applicable Law and Standard of Review*

Section 388, subdivision (a)(1), provides: "Any parent or other person having an interest in a child who is a dependent child of the juvenile court . . . may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a dependent child . . . for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court." To prevail on a section 388 petition, the petitioner must show "'"by a preponderance of the evidence (1) that there is new evidence or a change of circumstances and (2) that the proposed modification would be in the best interests of the child."'" (*In re Malick T.* (2022) 73 Cal.App.5th 1109, 1122, italics omitted; see *In re Stephanie M.* (1994) 7 Cal.4th 295, 317; *In re J.M.* (2020) 50 Cal.App.5th 833, 845.)

Because Rosa had the burden to demonstrate there was new evidence or a change of circumstance, we review the juvenile court's finding Rosa failed to meet her burden by determining whether the evidence compels a finding in her favor on that issue as a matter of law. (See *In re N.O.* (2019) 31 Cal.App.5th 899, 925-926; *In re Aurora P.* (2015) 241 Cal.App.4th 1142, 1161, 1163.) Specifically, we determine whether "the evidence 'was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding."'" (*In re Luis H.* (2017) 14 Cal.App.5th 1223, 1227; see *In re I.W.* (2009) 180 Cal.App.4th

6

1517, 1528, disapproved on another ground in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1003, fn. 4.)

We review for abuse of discretion the juvenile court's ruling the proposed modification—here, returning Ebony and Nila to Rosa's care or reinstating reunification services—was not in the children's best interests.  (See *In re Stephanie M.*, *supra*, 7 Cal.4th at p. 318*; In re Malick T.*, *supra,* 73 Cal.App.5th at p. 1123; *In re N.F.* (2021) 68 Cal.App.5th 112, 120.)  "'"The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason.  When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court."'" (*In re Stephanie M.*, at pp. 318-319; see *In re I.B.* (2020) 53 Cal.App.5th 133, 153.)

     B.     *The Juvenile Court Did Not Err in Ruling There Was No Change in Circumstances*

"'Not every change in circumstance can justify modification of a prior order'" under section 388.  (*In re N.F.*, *supra*, 68 Cal.App.5th at p. 120; see *In re A.A.* (2012) 203 Cal.App.4th 597, 612.)  "'"[T]he change in circumstances must be substantial."'" (*In re Malick T.*, *supra*, 73 Cal.App.5th at p. 1122; see *In re I.B.*, *supra*, 53 Cal.App.5th at p. 152; *In re J.M., supra*, 50 Cal.App.5th at p. 845.)  And where, as here, the juvenile court has terminated a parent's reunification services, a substantial change means "the problem that initially brought the child within the dependency system [has been] removed or ameliorated."  (*In re A.A.*, at p. 612; see *In re J.M.*, at p. 846 [a "parent establishes a substantial change of circumstances for purposes of section 388 by showing that . . . he or she has

7

resolved the previously unresolved issues supporting juvenile court jurisdiction"].)

Here, the basis of the trial court's jurisdiction was Rosa's history of physical altercations with Dylan and her mental health issues, behavioral concerns, and "emotional problems." Rosa argues the changed circumstances were that she separated from Dylan and that she completed the court-ordered anger management, parenting and outpatient treatment programs; also completed a domestic violence program; and participated in individual counseling. The Department acknowledged in a March 2021 interim review report Rosa stated she had separated from Dylan. But the juvenile court did not have to find that Rosa's statements were credible or that the separation was likely permanent. (See *In re Mickel O.* (2011) 197 Cal.App.4th 586, 615 [on a section 388 petition, "'[i]t is the [juvenile] court's role to assess the credibility of the various witnesses'" and "'to weigh the evidence to resolve the conflicts in the evidence'"].) And the court had good reason not to believe Rosa. In a September 2020 interim review report, filed only a few months before Rosa filed her section 388 petition, the Department stated Rosa, in violation of the court's order, had been visiting Ebony and Nila with Dylan present. (See *In re N.F., supra*, 68 Cal.Aplp.5th at p. 120 ["In determining whether the petitioning party has carried his or her burden [on a section 388 petition], 'the court may consider the entire factual and procedural history of the case.'"].)

And even if Rosa had really separated from Dylan, there was evidence Rosa continued to have physical altercations with him, from which the juvenile court could reasonably conclude the issues that brought the children within the dependency system, including Rosa's domestic violence and behavioral issues, had not

been adequately resolved or remedied.  True, Rosa eventually completed the court-ordered programs.  And she regularly participated in individual counseling sessions during the reunification period.  But "[t]he fact that the parent 'makes relatively last-minute (albeit genuine) changes' does not automatically tip the scale in the parent's favor."  (*In re D.R.* (2011) 193 Cal.App.4th 1494, 1512.)  And there was evidence the programs and counseling were not all that helpful.  Rosa called Dylan on the phone during a visit with her children in March 2020—after she started participating in individual counseling and the court-ordered programs—and yelled at him, "You are a motherfucker, it is your fault that we are not getting our kids back."  The monitor ended the visit because, even after Ebony began crying, Rosa ignored Ebony and continued to yell at Dylan.  (Cf. *In re Jaden E.* (2014) 229 Cal.App.4th 1277, 1289 [order terminating reunification services was not an abuse of discretion where the mother "continued to obstinately and belligerently maintain that she did not require any services to reunify with the minor; and remained completely oblivious to the significantly detrimental impact that her actions were having on her son"].)

In addition, the supervisor of Rosa's domestic violence and anger management programs told the Department that Rosa was "called out of [the domestic violence] class on several occasions due to Rosa's inappropriate comments to the facilitator of the class and to the [other] students taking the course . . . ."  And it took Rosa two years to complete the 52-week anger management program because she repeatedly stopped attending, and when she did attend, she "antagonized others in the class and got into constant confrontations."  Finally, as the trial court observed,

9

Ms. W. saw Rosa yelling at and hitting Dylan in April 2021—after Rosa filed her section 388 petition alleging there was a change in circumstances. When questioned by the Department about her behavior, Rosa did not deny or attempt to explain it; she simply stated she did not want to talk about it. The juvenile court did not err in finding Rosa failed to show a substantial change of circumstances. (See *In re D.P.* (Feb. 10, 2022, C093535) ___ Cal.App.5th ___, ___ [2022 WL 714791, p. 6] ["mother presented only evidence of completing classes and attending therapy sessions," but "any change in circumstance is . . . weighed against her long history of allowing father to abuse the children"]; *In re N.F.*, *supra*, 68 Cal.App.5th at p. 122 ["Given Mother's history, her recent completion of yet another program did not constitute a material change in circumstances."].)

C. *The Juvenile Court Did Not Abuse Its Discretion in Ruling the Proposed Modifications Were Not in Ebony's or Nila's Best Interests*

Even if Rosa had shown a change in circumstances, the juvenile court did not abuse its discretion in ruling it was not in Nila's or Ebony's best interest to return either of them to Rosa's care or to reinstate reunification services for Rosa. "[B]est interests is a complex idea" that requires the court to consider a variety of factors. (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 530.) "When, as in this case, a section 388 petition is filed after family reunification services have been terminated, the juvenile court's overriding concern is the child's best interests. [Citation.] The parent's interests in the care, custody and companionship of the child are no longer paramount; and the focus shifts to the needs of the child for permanency and stability." (*In re Malick T.*,

10

*supra*, 73 Cal.App.5th at pp. 1122-1123; see *In re Stephanie M.*, *supra*, 7 Cal.4th at p. 317; *In re J.M.*, *supra*, 50 Cal.App.5th at p. 847.)

Rosa alleged it was in the children's best interest for the court to return them to her care, or to reinstate reunification services, because she was their biological mother, they were bonded to her, she had learned parenting skills through the programs she completed, and she could provide Ebony and Nila a nurturing home. Certainly Ebony and Nila had an interest in having a biological parent raise them. (See *In re J.M.*, *supra*, 50 Cal.App.5th at p. 849.) But that was not enough to justify reinstating reunification services. Because of a child's need for permanency and stability, after "reunification services have been terminated, there is 'a rebuttable presumption that continued foster care is in the child's best interests.'" (*In re J.M.*, at p. 847; see *In re Marilyn H.* (1993) 5 Cal.4th 295, 310.)

The evidence did not support the rest of Rosa's contentions. First, there was evidence Ebony's and Nila's bonds with Ms. W. were least as strong, if not stronger, than with their bonds with Rosa. (See *In re D.P., supra*, ___ Cal.App.5th at p. ___ [2022 WL 714791, p. 6] [juvenile court did not abuse its discretion in denying mother's section 388 petition where, although "the minors may [have been] bonded with mother," the "evidence available to the court when it denied mother's petition indicated a significant bond with the caretakers"].) According to the Department's January 2021 report for the section 366.26 hearing, Ms. W. stated that she, Ebony, and Nila had grown closer during the two years they had been in her care and that Ms. W.'s family considered Ebony and Nila part of their family. (See *In re J.C.* (2014) 226 Cal.App.4th 503, 527 [juvenile court did not abuse its

11

discretion in denying a section 388 petition where the caregiver "was the only constant and stable parent [the child] had ever known," and the caregiver and caregiver's other children "felt like [the dependent child] was part of their family"].)  Ebony and Nila did not ask Ms. W. about Rosa or look forward to visits with Rosa. And according to the Department's May 2021 interim report, Ms. W. stated Ebony and Nila began acting out after recent visits with Rosa.  Nila behaved worse at her daycare center, cried excessively, and had anxiety when separated from Ms. W.  Ebony also acted out in school and poked her fingers into her arm and said, "I'm hurting myself."

Second, as discussed, there was evidence the court-ordered programs and counseling had not been particularly helpful to Rosa or alleviated the problems supporting juvenile court jurisdiction.  (See *In re Anthony W.* (2001) 87 Cal.App.4th 246, 251 ["Mother made no showing how it would be the children's best interest to continue reunification services, to remove them from their comfortable and secure placement to live with mother who has . . . a recurring pattern of domestic violence in front of the children."].)  And finally, the evidence Rosa could in fact provide the permanent and stable living situation Ebony and Nila needed was limited.  The Department's June 2021 interim review report stated that Rosa was living in a room in transitional housing, where Ebony and Nila could not live with her, and there was no evidence Rosa had a plan to obtain housing for her and the children.

The Department also reported that, according to Ms. W., Rosa would frequently fail to perform parenting obligations during visits with the children.  Rosa did not change Ebony's and Nila's diapers and, after they were potty-trained, did not take

12

them to use the bathroom when necessary.  And she did not help console Ebony and Nila when they were upset.  A Department social worker similarly reported that during monitored visits Rosa did not attempt to comfort Ebony and Nila when they cried, instead telling them to "grow up."  (See *In re Anthony W.*, *supra*, 87 Cal.App.4th at p. 251 ["The children should not be made to wait indefinitely for mother to become an adequate parent."].)  In contrast, Ms. W. had provided Ebony and Nila a stable home for two years, was meeting their developmental needs, and was willing to adopt them.  (See *In re N.F.*, *supra*, 68 Cal.App.5th at p. 122 [juvenile court did not abuse its discretion in denying a section 388 petition where the child "was thriving in [the caretakers'] stable home and was bonded to them," the caretakers "loved [the child] and were committed to providing her permanency through adoption," and the mother's "circumstances were unstable"].)

### DISPOSITION

The order is affirmed.

SEGAL, J.

We concur:

PERLUSS, P. J.                    FEUER, J.

13